## Earl D. Miner v. Michael Chater, Superintendent, Rutland Regional Correctional Center

403 A.2d 274

[No. 205-78]

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed June 5, 1979

*John J. Welch, Jr.*, Rutland, for Plaintiff.

*James L. Morse*, Defender General, Montpelier, *Nicholas L. Hadden* and *Stephen W. Gould*, Law Clerk (On the Brief), St. Albans, amicus curiae.

*M. Jerome Diamond*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Defendant.

**Billings, J.** This appeal from the superior court's denial of habeas corpus relief presents for our determination the validity of the Department of Correction's practice of denying an inmate all credit against his sentence for time spent on parole, in compliance with all conditions, where parole is subsequently revoked. Since we find this practice unlawful, we reverse.

On July 31, 1970, the appellant was sentenced to a term of zero to eight years following conviction upon his plea of guilty to the offense of second degree murder. A *mittimus* reflecting this sentence issued the same day, and the appellant began execution of his sentence. On April 28, 1971, the appellant was paroled pursuant to a parole agreement dated April 14, 1971.

The appellant remained on parole status for a period of more than six years, until July 7, 1977, when he was jailed on a parole revocation warrant charging him with having failed to lead an orderly and industrious life and to properly maintain and support his family, in violation of his conditions of parole. On July 14, the Board of Parole revoked the appellant's parole following hearing.

Pursuant to its uniform practice, the Department of Corrections (the Department) did not credit the appellant with any part of the more than six years he had successfully spent on parole, crediting against his maximum sentence of eight years only the time he had actually spent within the institution prior to his parole. The Department therefore established his release date, until which the Department could hold the appellant under his sentence, at a point well into the 1980s. Had the appellant been granted credit for the time spent in compliance with his conditions of parole, his release date, taking into account ninety days of good time credit accrued during the appellant's incarceration prior to parole, would have been April 29, 1978.

In March of 1978, the appellant brought a petition for a writ of habeas corpus, alleging that his parole was revoked without due process of law, in violation of his guarantee to equal protection of the laws, and in derogation of his right to effective assistance of counsel. The appellant also urged that his continued confinement was unlawful as it was based on the Department's denial of credit for parole time, which the appellant challenged as subjecting him to double jeopardy and multiple punishment prohibited by the Federal Constitution, and as being contrary to Vermont law. The matter was tried on May 1, 1978. The superior court subsequently issued findings of fact and conclusions of law, rejecting all challenges, and filed a judgment order on June 28, 1978, dismissing the petition.

The appellant does not renew on this appeal his challenges to the process by which his parole was revoked, but attacks the Department's denial of credit for his parole time anew on all grounds previously advanced. Since we consider Vermont law to be dispositive of the issue, we do not reach the appellant's constitutional claims.

Under our law, a person's sentence begins to run from the date on which he is received at the correctional facility for service of his sentence. 13 V.S.A. § 7031(b). The appellant's sentence began to run on July 31, 1970, when he was committed to the Windsor State Prison. Unless the running of his sentence was somehow suspended, the appellant was entitled to be released from all supervision of the Department

under his sentence eight years later at the maximum. 28 V.S.A. §§ 506(b), 708(a).

No legislative or constitutional provision invests the Department of Corrections with authority to suspend the running of a sentence. The authority to suspend sentence must therefore be found to be a part of some inherent power in the Department, or to arise by implication from some other grant of authority. Under our frame of government, however, the Department has neither inherent authority to act within its sphere up to the point where it is controlled by some positive act of the Legislature, nor implied powers. This is because the Department of Corrections is neither the sovereign, nor the elected representative of the people, nor a body invested with powers under our constitution. It is an administrative entity, created by act of the Legislature, and, again by legislative act, invested with certain powers and charged with certain duties.

█ Although the Department has been granted a large measure of discretion in the exercise of its powers and in the discharge of its duties, the Legislature has made clear in Chapter 9 of 3 V.S.A. that the administrative departments may exercise only those powers expressly conferred. Section 203 of Title 3 provides:

Authority limited

The commissioner or board at the head of each department herein specified shall exercise only the powers and perform the duties imposed by law on such department.

Within the same chapter, 3 V.S.A. § 212(4) specifies the Department of Corrections as an administrative department "through . . . which the governor, under the constitution, shall exercise such functions as are by law assigned to [it] . . . ." Thus the Legislature has established that authority in an administrative department cannot arise through implication. An explicit grant of authority is required. The law is unambiguous and absolute on its face.

█ █ Even were it otherwise, this is the last sort of case in which we would recognize authority in an administrative arm of government in the absence of an explicit grant,

for the power of the state is being brought to bear on an individual to keep him incarcerated against his claim that the body wielding it lacks authority to do so. The power to deprive an individual of his physical liberty is one of the most awesome in the sovereign's arsenal, and this Court will vigorously scrutinize any claim of authority to invoke it, to assure that the power is exercised only in accordance with law. Under our oath to uphold the Vermont Constitution, we are required to do no less, as that document provides in Chapter I, Article 10 that "[no] person [can] be justly deprived of his liberty, except by the laws of the land . . . ."

Even if we were to conclude that authority in the Department to suspend sentence could arise without an express grant, our examination of the statutes, both those in effect in 1970, when the appellant was sentenced, and those currently in effect, convinces us that the practice of the Department runs strongly against the legislative intent. 28 V.S.A. § 1001, in effect both when the appellant was sentenced and when he was paroled, provides:

> *Construction and purpose*
> [Parole] is intended to permit *serving* part of a sentence to a correctional facility *outside the physical boundaries* thereof *but without otherwise diminishing the effect of the sentence.* It is intended to provide *a method of supervising the serving of a sentence,* but is not intended to affect the constitutional power of the governor to fully, partially or conditionally pardon prisoners. (Emphasis added.)

The next section defines parole as "the release of a prisoner to the community by the parole board before the end of his sentence *and as a continuing part thereof,* subject to conditions imposed by the board and to its supervision . . . ." 28 V.S.A. § 1002(b) (emphasis added). We conclude that the foregoing evidences the plain intent of the Legislature to make parole an alternative way of serving out a sentence of imprisonment. Our conclusion is consistent with 1968 Op. Atty. Gen. No. 39, which provides in pertinent part:

> In 1967, the Vermont legislature enacted 28 V.S.A., Chapter 16. The purpose of this chapter is to permit a

person to serve part of his sentence in a correctional facility outside the institution. 28 V.S.A. § 911 [subsequently renumbered without change as 28 V.S.A. § 1001]. Consequently, a person placed on parole is still serving his sentence.

The current provision governing construction of the parole statutes supports the same view:

This chapter shall be construed to provide a method of supervising the *serving of a sentence* through the provision of parole services . . . . [28 V.S.A. § 401, added by 1971 No. 199 (Adj. Sess.), § 20 (emphasis added)].

These parole provisions should be contrasted with former 28 V.S.A. § 1208, the probation provision in effect when the appellant was sentenced and paroled, and 28 V.S.A. § 205, currently in force, providing that "[a]fter passing sentence, a court *may suspend* all or part of the sentence and place the person so sentenced in the care and custody of the [Commissioner of Corrections, formerly the State Probation Officer] upon such conditions . . . as it may prescribe . . . ." The status of parole and that of probation are thus fundamentally different. A parolee is in execution of his sentence while a probationer is not. Thus the cases addressing the question of credit against a sentence for time spent on probation, although urged as authority by analogy, are of no help.

The appellee argues that it has been established in our cases that the rights of a *probationer* are governed to a very high degree by the terms of his probation contract. *Sherwin v. Hogan*, 136 Vt. 606, 401 A.2d 895 (1979). Since parole is a relatively new institution in Vermont, we have not had occasion to determine whether it is controlled to the same extent as probation by contract principles. We need not decide the legal effect of a provision providing for the forfeiture of all parole time upon revocation, since none was included in the parole document executed by the appellant. That document contained a number of conditions, which the appellant, by his signature, promised to keep and perform, but nowhere did he agree to forego any rights he might have had relative to the crediting of time against his sentence. The document provision in the parole that upon revocation the appellant

"shall be apprehended and forthwith returned to [his] former condition of custody to serve the remainder of [his] term of imprisonment" settles nothing, for the appellant's former condition of custody was incarceration, and the remainder of his term of imprisonment is the precise point now being litigated.

The Department of Corrections had authority to take back upon revocation of parole only what it bestowed upon the appellant at the time it paroled him, release from the confines of the correctional facility. We emphasize again that the questions of whether the Department's practice of denying credit could stand if a forfeiture provision had been made a part of the parole agreement, or if the Department had acted under a statute providing for such a forfeiture, are not now before us. The practice of the Department is unsupported by any grant of authority and is contrary to the intent of the parole statutes.

*Reversed and remanded.*