## State of Vermont v. Thomas K. Olsen

[680 A.2d 107]

No. 95-119

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 10, 1996

*M. Patricia Zimmerman*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Morse, J.** Defendant Thomas Olsen appeals his conviction by jury for the second-degree murder of his girlfriend's two-year-old daughter, Melissa, arguing that the trial court erred by (1) denying his motion for judgment of acquittal on the issue of his intent to kill, (2) instructing the jury on a theory of second-degree murder not charged in the information, (3) excluding evidence of prior allegations of child abuse against the daycare provider, and (4) failing to grant his motion for new trial on newly discovered evidence. We affirm.

On November 3, 1992, the day of the death, defendant and Melissa's mother picked up Melissa and her sister between 4:15 and 4:30 p.m.

from their daycare provider. Melissa had been exhibiting cold-like symptoms, was inactive, and had not had a good appetite for a few days. Upon arriving home, Melissa's mother carried her into the house because she was not feeling well. Mother then went directly to an appointment scheduled for 4:30 p.m., leaving defendant with the children.

Defendant's brother, who was in the process of moving into the home, arrived at approximately 4:45 p.m. Melissa's older sister and defendant's daughter were coloring in the kitchen. A few minutes later, defendant called to his brother to come upstairs where Melissa was lying on a love seat in defendant's bedroom. Defendant explained to his brother that she had fallen down the stairs. The brother observed that Melissa appeared to have "the wind knocked out of her," and to be "a little flush," her lips being "just a little discolored maybe." The brother suggested that defendant take her to the hospital. They arrived at the hospital emergency room at approximately 5:00 p.m. At 6:23 Melissa was pronounced dead.

## I.

Defendant first contends that the trial court erred by denying his motion for judgment of acquittal, claiming that the evidence presented at trial was insufficient to establish that he acted with "malice," the requisite state of mind necessary to support a conviction of murder.

"Malice" has been defined as "an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm." *State v. Doucette*, 143 Vt. 573, 582, 470 A.2d 676, 682 (1983); see also *State v. Johnson*, 158 Vt. 508, 519, 615 A.2d 132, 138 (1992) (because malice denotes various mental states trial courts should refrain from using term in jury instructions to avoid confusion). In this case, the evidence was more than adequate to prove beyond a reasonable doubt that defendant acted with wanton disregard for the likelihood that his behavior might cause death or serious injury.

The victim, Melissa, was a two-year-old child. She sustained severe head and neck injuries, lacerations of the liver, and hemorrhaging in the pancreas. An autopsy performed by the state medical examiner's office determined the immediate cause of death to be injuries to the brain and brainstem. These injuries, identified as the consequence of violent shaking, were consistent with a pattern of abuse-related physical symptoms known as "shaken-baby syndrome."

The medical examiner testified that Melissa's abdominal injuries, which he described as severe, could have been fatal in themselves. Moreover, these abdominal injuries could only have been caused by extremely forceful kicks, punches or blows with a blunt object. The medical examiner testified, as well, that this combination of serious head and abdominal injuries was not consistent with a fall down the stairs, and that he would classify the cause of death as "homicide." He also noted that the magnitude of Melissa's injuries would have been apparent to a care giver because Melissa would have been "rapidly incapacitated" and in pain.

Given the nature and severity of these injuries, the jury could have concluded beyond a reasonable doubt that defendant's beating of Melissa amounted to second-degree murder. See *State v. Brunell,* 159 Vt. 1, 8-9, 615 A.2d 127, 131 (1992) (evidence supported second-degree murder conviction for death of three-year-old daughter where defendant's conduct was so "'reckless and wanton'" that jury could infer he was aware of serious risk of death) (quoting *United States v. Eder,* 836 F.2d 1145, 1148-49 (8th Cir. 1988)); *Doucette,* 143 Vt. at 582, 470 A.2d at 682 (to find malice jury may take into consideration facts and circumstances surrounding killing). The court properly denied the motion for judgment of acquittal.

## II.

Next, defendant claims the State charged him with second-degree murder based solely upon express intent to kill, and that it was error to submit the case to the jury on the theory that he could be convicted for "wanton disregard" for life, or so-called implied intent to kill. See *State v. Burclaff,* 138 Vt. 461, 464, 418 A.2d 38, 40 (1980) (defendant must be given notice of charges in indictment or information). We disagree.

The information charged, in a count of second-degree murder, that defendant "willfully, deliberately and with malice aforethought kill[ed] and murder[ed] Melissa Stevens." Focusing on the words "willfully" and "deliberately," defendant contends that this charge describes only express intent to kill. He further asserts that because the State did not introduce sufficient evidence of express intent to convict him, he chose not to testify. As noted above, this Court has defined "malice" as "an intention to kill, an intention to do great bodily harm, or a wanton disregard of the likelihood that one's behavior may naturally cause death or great bodily harm." *Doucette,*

143 Vt. at 582, 470 A.2d at 682; see also *Johnson*, 158 Vt. at 515, 615 A.2d at 136 (definition of malice includes intent to cause serious bodily injury or extreme indifference to human life). "Willfully and deliberately" means done by design, not by accident or mistake. *Brunell*, 159 Vt. at 7, 615 A.2d at 130. Thus the information put defendant on notice that intent to kill could be proven by showing that his actions were not accidental and evinced "wanton disregard" for life.

Furthermore, second-degree murder is a lesser-included offense of first-degree murder. *State v. Delisle*, 162 Vt. 293, 301, 648 A.2d 632, 637 (1994). The jury could have convicted defendant of second-degree "wanton disregard" murder even if the State had charged him only with "wilful, deliberate and premeditated" first-degree murder, despite the fact that the two charges are predicated on different mental states. See 13 V.S.A. § 2301 (defining first-degree murder). There is no authority for his claim that the State must specify in the information how it intends to prove intent to kill. See *State v. Towne*, 158 Vt. 607, 631, 615 A.2d 484, 497 (1992) (information need only reasonably indicate exact offense accused is charged with). Defendant's claim is without merit.

## III.

We discuss defendant's last two claims together. After the verdict, defendant sought a new trial, relying on an affidavit of Claude Buttrey, defendant's counsel. See V.R.Cr.P. 33 (motion for new trial on grounds of newly discovered evidence). In the affidavit, attorney Buttrey stated that Melissa's sister saw the daycare provider kick Melissa in the abdomen on the day she died. He contended that the daycare provider threatened the sister to prevent her from testifying, and argued that if the sister were permitted to testify, the outcome of the trial would change. Attorney Buttrey conceded, however, that he was aware, prior to trial, of the interaction between the sister and the daycare provider, and of the sister's statement about the abuse. He stated as well that he chose not to call the sister as a witness because she was "terrified of testifying." The "evidence" in question plainly was not "newly discovered" after trial. See *State v. Sheppard*, 155 Vt. 73, 75, 582 A.2d 116, 118 (1990) (to be "newly discovered," evidence must be discovered after trial). Furthermore, the "evidence" was not an affidavit of the supposed witness, but was instead a hearsay account of what the witness allegedly told attorney Buttrey. Evidence of this character would not, in itself, support a motion for a new trial.

See *id.* at 75, 582 A.2d at 117 (motions for new trial on grounds of newly discovered evidence are not favored; exacting standards apply); *State v. Miller*, 151 Vt. 337, 339, 560 A.2d 376, 377 (1989) (new trial test clearly requires court to evaluate quality of evidence alleged to be newly discovered).

Defendant also argues that the trial court erred by excluding evidence of allegations of child abuse against the daycare provider. Although the record is vague on the point, before Melissa's death the daycare provider had apparently been the subject of an SRS investigation. Allegedly, a child under her care was struck on the face, leaving an adult hand print. This allegation of abuse was ultimately found to be unsubstantiated. The State sought to bar introduction of this evidence through a motion in limine, and the trial court granted the motion.

██ Defendant claims that, given the evidence of abuse in attorney Buttrey's affidavit, evidence of the prior allegations of child abuse is relevant and admissible under V.R.E. 404(b) as probative of the daycare provider's motive and opportunity to abuse Melissa. See *State v. Gilman*, 158 Vt. 210, 214, 608 A.2d 660, 663 (1992) ("[E]vidence tending to show a third party's involvement in a crime should be admitted 'as long as motive and opportunity have been shown and . . . there is also some evidence to directly connect [the] third person to the crime charged.'") (quoting *State v. Denny*, 357 N.W.2d 12, 17 (Wis. Ct. App. 1984)) (alterations in original). As noted above, however, the affidavit was first submitted to the court in support of a post-trial motion, and furthermore, was not an affidavit of the alleged witness. At trial, defendant offered no direct evidence indicating that the daycare provider had abused Melissa, and even if he had, the injuries described belie the conclusion that Melissa could have received them before arriving home. The court can hardly be faulted for excluding evidence that the daycare provider was the subject of an investigation into unsubstantiated child abuse involving another child. The relevance of the evidence was tenuous, its probative value low, and the risk of jury confusion substantial. The court did not abuse its discretion by excluding the evidence. See V.R.E. 403, 404.

*Affirmed.*