## State of Vermont v. Richard G. Cameron

[721 A.2d 493]

No. 97-046

Present: **Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 16, 1998

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellant.

**Johnson, J.** Defendant appeals jury convictions resulting from charges that he sexually assaulted and molested his former girlfriend's two young children. He argues that (1) he was entitled to a judgment of acquittal with respect to the charges concerning one of the children because only hearsay evidence supported those charges; (2) the trial court's admission of hearsay testimony concerning statements that the children had made to others, based on its conclusion that the children were available to testify through their videotaped trial testimony, violated his right to confront adverse witnesses; (3) the court erred in excluding defense witnesses who would have presented testimony suggesting that the children may have been abused by their stepfather rather than defendant; and (4) the court lacked the authority to reconvene and increase defendant's sentence on its own motion two days after having originally pronounced sentence. We reject each of these arguments and, therefore, affirm the convictions and sentence.

In the spring of 1990, defendant moved in with a woman and her two children, a boy born in March 1987, A.V., and a girl born in May 1988, S.T. In July 1991, defendant and the woman had a child together. The couple separated in the summer of 1993, and the woman moved in with another man, whom she married the following year. In December 1993, as a result of statements the children made to their mother and stepfather indicating that defendant had sexually abused them, an employee of the Department of Social and Rehabilitation Services (SRS) interviewed the children. A second interview was held in April 1994. Both interviews were videotaped.

In November 1994, the State filed a four-count information charging defendant with three counts of aggravated sexual assault, in violation of 13 V.S.A. § 3253(a)(8), and one count of lewd and lascivious conduct with a child, in violation of 13 V.S.A. § 2602. The State alleged that between July 1992 and May 1993 defendant engaged in lewd and lascivious conduct with S.T. by making contact between his hand and her vulva, and further sexually assaulted both children by making contact between his penis and A.V.'s mouth, S.T.'s mouth, and S.T.'s vagina. The children testified at trial through previously videotaped testimony taken pursuant to V.R.E. 807. The State's evidence at trial consisted mainly of the children's videotaped trial testimony and the testimony of other State's witnesses — the children's mother, their grandmother, their therapist, and the SRS interviewer — who repeated statements that the children had made to them. The latter testimony was admitted under V.R.E. 804a, the hearsay exception relating to statements made by children who are the putative victims of sex offenses. The jury found defendant guilty on all counts, and the court sentenced him to ten-to-thirty-five years on each of the aggravated sexual assault convictions and four-to-five years on the lewd and lascivious conduct conviction, all to be served concurrently.

## I.

Defendant first argues that S.T.'s trial testimony failed to support convictions on two of the counts against him — hand-to-vulva and penis-to-mouth contact — and that the State could not rely solely upon hearsay testimony to support those convictions. As for the hand-to-vulva contact, we reject defendant's argument that because S.T. indicated that she was wearing clothes when the contact occurred, her testimony could not support the State's charge of lewd and lascivious conduct with a child. Lewd and lascivious conduct does not require direct contact between particular body parts. Cf. *In re P.M.*, 156 Vt. 303, 305, 592 A.2d 862, 862 (1991) (affirming finding of delinquency based on juvenile having committed lewd and lascivious conduct by rubbing genital areas of his partially clothed body against genital areas of child's partially clothed body). S.T.'s videotaped trial testimony that defendant rubbed her between the legs "in the front" where "I go to the bathroom" established the State's charge that defendant committed lewd and lascivious conduct with a child by making contact between his hand and her vulva, notwithstanding her testimony that she was wearing clothes at the time of the incident.

As for the charge alleging penis-to-mouth contact between defendant and S.T., the State apparently concedes that S.T.'s trial testimony does not support the verdict on this charge. Therefore, we address the second part of defendant's argument — that his conviction on this charge was supported solely by hearsay testimony, in violation of *State v. Robar*, 157 Vt. 387, 601 A.2d 1376 (1991). In *Robar*, we held that the State cannot meet its burden of proving guilt beyond a reasonable doubt "if the sole evidence upon which conviction is based is past recollection recorded or a prior inconsistent statement, *unless* the prior statement meets specific standards of reliability." *Id.* at 395, 601 A.2d at 1380 (emphasis added). We reversed the defendant's conviction because the only evidence identifying him as the perpetrator was the inquest testimony of one of the State's witnesses, who testified at trial that she had no memory of the inquest or the events surrounding it. See *id.* at 395-96, 601 A.2d at 1380. We concluded that the inquest testimony was not reliable because (1) it was given six months after the event itself; (2) it was given as part of a deal involving potential charges against the witness, who incorrectly believed that the defendant had confessed; and (3) no information was available concerning the circumstances or date of the witness's original statement to police. See *id.*

In later cases, however, we found prior statements sufficiently reliable to support convictions. In *State v. West*, 164 Vt. 192, 667 A.2d 540 (1995), for example, the defendant argued that the only evidence identifying him as the perpetrator was the complainant's hearsay statement admitted under the excited utterance exception. We distinguished that case from *Robar*, noting that the hearsay statement was corroborated by other evidence, was made only minutes after the assault, and had not been coerced. See *id.* at 197-98, 667 A.2d at 543. Similarly, in *State v. Marcy*, 165 Vt. 89, 98-99, 680 A.2d 76, 79 (1996), we concluded that the assault victim's prior statement, which had been admitted as a past recollection recorded, was sufficiently reliable to support the defendant's conviction because the tape-recorded statement was bolstered by corroborating evidence, was given the day after the assault, was consistent with an earlier statement given to the same police officer, and did not appear to be coerced. We also determined that defense counsel had had an adequate opportunity to cross-examine the victim concerning her prior statement. See *id.*

Here, defendant makes no argument as to either the reliability of the statements that the SRS interviewer testified S.T. had made to her concerning penis-to-mouth contact or the opportunity defense

counsel had to cross-examine S.T. concerning those statements during the children's videotaped trial testimony. We conclude that the statements bear sufficient indicia of reliability to support conviction on the charge alleging penis-to-mouth contact between defendant and S.T. The SRS interview in which S.T. described such contact took place one to two years after the alleged incident but shortly after her initial disclosure of the incident to her mother and therapist. Having viewed the videotape of the interview, the district court found that the SRS employee interviewed the children separately in a highly professional manner, without suggesting answers or content; the children's statements were consistent with statements they had made to their mother, grandmother, and therapist; and the children responded in age-appropriate language, which suggested that they had not been coached or coerced. Further, the alleged improper contact S.T. described during the SRS interview was corroborated at that time by her gestures and demonstrations with anatomically correct dolls. Finally, defense counsel had an adequate opportunity during S.T.'s videotaped trial testimony to cross-examine her concerning her failure to recollect the penis-to-mouth contact that she had described to the SRS interviewer. We conclude that the State's evidence was sufficient to fairly and reasonably support defendant's guilt on each count beyond a reasonable doubt. See *Robar*, 157 Vt. at 391, 601 A.2d at 1378 (stating standard for determining sufficiency of evidence).

We reject defendant's argument that hearsay statements of child victims admitted under V.R.E. 804a were not intended to serve as direct evidence of guilt but only to corroborate other direct evidence of guilt. In relevant part, V.R.E. 804a(a) provides that the hearsay statements of a child who is the alleged victim of a sex offense are admissible if the court determines that the statements were not taken in preparation for a legal proceeding, the child is available to testify, and the statements provide substantial indicia of trustworthiness. In *State v. Gallagher*, 150 Vt. 341, 346-47, 554 A.2d 221, 224-25 (1988), we stated that the Legislature intended V.R.E. 804a to allow hearsay statements of child sexual assault victims even when they are available to testify because of the likelihood that the intimidation of the process would render children unable to deliver effective live testimony or would cause them to recant earlier statements about having been sexually abused. If the Legislature intended the rule to apply in situations where child victims had recanted the abuse or were unable to repeat the facts of the abuse in court, then surely the rule must be allowed to support a conviction when the child's in-court

testimony is insufficient to establish the elements of the offense. Otherwise, the only time it would apply would be when it was needed least — when the child was able to describe the abuse in court.

## II.

As previously noted, for the hearsay statements of a child sexual assault victim to be admissible under V.R.E. 804a, the child must be "available to testify in court or under Rule 807." V.R.E. 804a(a)(3); see V.R.E. 804a(b) (upon motion of either party in criminal or delinquency proceeding, court shall require child to testify for State). Here, rather than present live, in-court testimony, the children testified under V.R.E. 807, which allows videotaped or closed-circuit testimony by young children who are the alleged victims of specified sexual offenses. Defendant contends that the court violated his constitutional right to confront adverse witnesses by allowing the children's videotaped testimony to satisfy the availability require-ment contained in V.R.E. 804a. We disagree.

There is a widely recognized preference for requiring face-to-face confrontation between a defendant and his accusers. See *Maryland v. Craig*, 497 U.S. 836, 849 (1990); *State v. Jarzbek*, 529 A.2d 1245, 1250-51 (Conn. 1987); see also *State v. Roberts*, 154 Vt. 59, 66, 574 A.2d 1248, 1250-51 (1990) (confrontation clause provides two types of protections for criminal defendants: the right to face those who testify against them and the right to conduct cross-examination). In addition to the belief that it is more difficult to lie about a person in the person's presence, there is a strong symbolic purpose served by requiring the accuser to face the person being accused. See *Craig*, 497 U.S. at 846-47; *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988) ("there is something deep in human nature that regards face-to-face confron-tation between accused and accuser 'as essential to a fair trial in a criminal prosecution'") (quoting *Pointer v. Texas*, 380 U.S. 400, 404 (1965)).

Nevertheless, face-to-face confrontation is not an "indispensable element" of the right to confront one's accusers. *Craig*, 497 U.S. at 847, 849-50 (face-to-face confrontation "is not the *sine qua non* of the confrontation right"). In upholding the constitutionality of a Mary-land statute permitting child sexual assault victims to testify by closed-circuit television outside the defendant's presence, the Court in *Craig* stressed that "[t]he central concern of the Confrontation Clause is to ensure the reliability of evidence against a criminal defendant by subjecting it to rigorous testing in the context of an

adversary proceeding before the trier of fact." *Id.* at 845. The Court concluded:

> Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation — oath, cross-examination, and observation of the witness' demeanor — adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.

*Id.* at 851; see *Gallagher*, 150 Vt. at 344, 554 A.2d at 233 (crux of confrontation clause violation is lack of effective opportunity to cross-examine adverse witness). Based on these considerations, the Court held that where necessary to protect a child witness from trauma that could affect the reliability of the child's testimony, states may apply procedures that do not provide face-to-face confrontation between the child witness and the defendant, but that otherwise ensure the reliability of the testimony by requiring that it be given in an adversarial setting. See *Craig*, 497 U.S. at 857.

Faced with the *Craig* decision, defendant does not contest the admissibility of the children's videotaped trial testimony in this case, but rather asserts that the testimony cannot form the sole basis for the jury to examine the demeanor of the children in determining whether they were trustworthy when making statements to others. We fail to grasp the reasoning behind this argument. Defendant does not dispute the admissibility of the children's statements admitted under V.R.E. 804a. Nor does he contend that he was not given a full opportunity to cross-examine the children concerning those statements at the time they gave their videotaped trial testimony. Nor does he explain why the jury was less able to judge the credibility of the children through their videotaped trial testimony than if they had testified in court at trial or live through closed-circuit television. See *Commonwealth v. Willis*, 716 S.W.2d 224, 228, 230 (Ky. 1986) (videotaped testimony is functional equivalent of in-court testimony; photographic or electronic presentation is not perfect as substitute for live testimony, but it will suffice because goal of providing view of witness's demeanor to jury is still achieved); see also *Jarzbek*, 529 A.2d at 1251-52 (considering that trial testimony of child witness was videotaped at hearing before trial judge in modified courtroom, and that defense counsel had full opportunity to cross-examine witness at

hearing, videotaped testimony was functional equivalent of in-court testimony); *State v. Thomas*, 442 N.W.2d 10, 18-19 (Wis. 1989) (accord).

■ The children's videotaped trial testimony was played for the jury on a large-screen television placed directly in front of the jury box. The jurors were able to view the children as closely as if they had testified in the courtroom and thus had the opportunity to judge the credibility of the children's trial testimony, including any responses to cross-examination concerning their prior statements made to others. We conclude that the district court did not violate defendant's right to confront witnesses against him by admitting the children's statements to others under Rule 804a based, in part, on the children's availability to testify by videotape under Rule 807.* Cf. *In re C.K.*, 164 Vt. 462, 466, 671 A.2d 1270, 1272-73 (1995) (no merit to father's argument that because court excluded him from courtroom during child's testimony, child was not available to testify within meaning of V.R.E. 804a(a)(3); for purposes of Rule 804a(a)(3), limited testimony does not equal unavailability).

### III.

Next, defendant argues that the district court violated his constitutional right to present exculpatory evidence by excluding two witnesses offering testimony concerning sexual misconduct by the children's stepfather. We find no error.

On the third day of trial, defense counsel notified the State that he intended to call to the stand a previously unidentified witness. That evening, the State deposed the potential witness and learned that he intended to testify that seven years earlier the children's stepfather had molested him. The following day, after the State had rested its case, defense counsel announced that a second potential witness had approached him and stated that some time in 1994 he had seen the children's stepfather masturbating while watching children play. Defense counsel stated his intention to call both witnesses to demonstrate that the children's stepfather had committed sexual offenses before and thus was a possible alternative perpetrator of the crimes alleged in this case. The court excluded the testimony as untimely noticed and as irrelevant and unfairly prejudicial.

---

* This Court has stated that "the Vermont confrontation clause provides the same right as the confrontation clause of the Sixth Amendment to the federal Constitution." *State v. Sprague*, 144 Vt. 385, 390 n.2, 479 A.2d 128, 131 n.2 (1984). Defendant has not argued that any stricter standard should apply under the Vermont Constitution.

 The purpose of V.R.Cr.P. 16.1(c), which requires the disclosure of witnesses that the defendant intends to call at trial, is to provide the prosecution with an adequate opportunity to depose or interview prospective witnesses in preparation for trial. See *State v. Verrinder*, 161 Vt. 250, 255, 637 A.2d 1382, 1386 (1993). The trial court has broad discretion to sanction violations of this rule, and may exclude witnesses altogether. See *id*. Witness preclusion is justified when the defendant's right to offer exculpatory testimony is outweighed by considerations concerning the integrity of the adversary process, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process. See *State v. Edwards*, 153 Vt. 649, 649, 569 A.2d 1075, 1076 (1989) (mem.).

Evidence tending to show that a third party committed a crime should be admitted if motive and opportunity are shown and there is also evidence to directly connect the third party to the offense charged. See *State v. Grega*, 168 Vt. 363, 375, 721 A.2d 445, 454 (1998); *State v. Olsen*, 165 Vt. 208, 213, 680 A.2d 107, 110 (1996); *State v. Gilman*, 158 Vt. 210, 214, 608 A.2d 660, 663 (1992); see also *Winfield v. United States*, 676 A.2d 1, 5 (D.C. 1996) (requiring that proffered evidence demonstrate reasonable possibility that person other than defendant committed charged offense ensures exclusion of evidence that is too speculative with respect to third party's guilt or too removed in time and place from offense charged). Here, assuming that the proffered evidence demonstrates motive and opportunity, it does not directly connect the stepfather to the offense charged. Nor does it tend to negate defendant's guilt, even if we were to adopt the relaxed standard set forth in *United States v. Stevens* and advocated by defendant. See 935 F.2d 1380, 1404-05 (3d Cir. 1991) (defendant need only demonstrate that evidence of third party's crimes has tendency to negate his own guilt and passes V.R.E. 403 balancing test). But see *Grega*, 168 Vt. at 377, 721 A.2d at 455 (evidence implicating others is subject to rules of evidence, including 404(b)). Certainly, it is not "signature" evidence, as defendant contends for the first time on appeal. See *id*. at 377, 721 A.2d at 455 (third party's inclination for anal intercourse and violent tendencies were not enough to demonstrate criminal signature); *State v. Bruyette*, 158 Vt. 21, 28, 604 A.2d 1270, 1273 (1992) (although prior acts of accused and charged acts need not be identical, they must possess common features that make it highly likely that unknown perpetrator and accused are same person).

▉ The children unambiguously identified defendant by name as the perpetrator. Undisputed evidence concerning the circumstances and events surrounding the alleged incidents of abuse indicated that the abuse took place while defendant was living with the children's mother and before the stepfather moved into the home. The stepfather's mere proximity to the children at a later time is insufficient to connect him to the crime or negate defendant's guilt. Given the State's lack of an adequate opportunity to investigate the claims of witnesses whose testimony was not proffered until the middle of defendant's trial, and the lack of probative value of the testimony in determining whether defendant was innocent or guilty of the charged offenses, the trial court did not abuse its discretion in refusing to allow the witnesses to testify. See *Grega*, 168 Vt. at 378, 721 A.2d at 456 (proffered evidence did not establish direct link between third persons and charged crime); *Olsen*, 165 Vt. at 213, 680 A.2d at 110 (court did not err in excluding evidence that day care provider was subject of investigation into unsubstantiated child abuse involving another child); *Gilman*, 158 Vt. at 215, 608 A.2d at 663 (proffered evidence that did not directly incriminate third party was likely only to confuse or mislead jury).

## IV.

Finally, defendant argues that the trial court violated statutory law and his right to due process by revising an earlier-imposed sentence on its own motion without giving him an opportunity to respond. We find no merit to this argument.

At the end of the first sentencing hearing, held on January 21, 1997, the trial court pronounced sentence, and then recessed. At that time, the court announced its intention to sentence defendant to four-to-five years for the lewd-and-lascivious-conduct conviction, to be served concurrently with ten-to-thirty-five-year terms, all but ten years suspended, for each of the three aggravated-sexual-assault convictions. The suspended part of the sentence was to be served on probation with special conditions imposed. Upon further reflection, shortly after recessing the January 21 hearing, the court decided to continue the sentencing hearing on January 23, 1997. At that hearing, the court informed the parties that it had not signed any mittimus following the January 21 hearing, and that no judgment had been entered. The court then imposed the same sentence as it had pronounced on January 21, except that no part of the sentence was suspended. The court made the change after realizing that its original

sentence did not reflect its intent to ensure that defendant would undergo intensive sex-offender treatment while incarcerated. Had the January 21 sentence gone into effect, defendant would have been released on probation following the expiration of the unsuspended part of the sentence even if he had refused treatment in prison. In the court's view, defendant's rehabilitation and public safety required imposing a sentence that provided incentives for defendant to take part in a comprehensive and intensive treatment program while incarcerated rather than satisfy that requirement on an out-patient basis while on probation.

■ Until 13 V.S.A. § 7042 was enacted, the general rule was that "a court does not have the power to modify a sentence after the term of the court has expired and execution of sentence has begun, unless the sentence was somehow invalid or improperly imposed." *In re Shequin*, 131 Vt. 111, 116, 300 A.2d 536, 539 (1973). Defendant contends that the trial court's sua sponte modification of his sentence did not fall within the exception to this general rule provided in § 7042(b) (within seven days of imposition of sentence, prosecution may file motion to modify sentence by setting forth reasons why sentence should be altered). We conclude that the sentence did not need to be modified pursuant to the procedure set forth in § 7042(b) because the trial court had not signed the mittimus before January 23, and thus execution of the sentence had not begun. See *Miner v. Chater*, 137 Vt. 330, 331, 403 A.2d 274, 275 (1979) (noting that appellant began execution of his sentence following issuance of mittimus). Accordingly, the court was free to modify its earlier pronouncement, which did not reflect its intent to ensure that defendant participate in a sex-offender treatment program while incarcerated. Cf. *State v. Breault*, 162 Vt. 625, 626, 649 A.2d 515, 516 (1994) (court had authority to reconsider transfer to juvenile court made upon mistaken belief that State did not oppose transfer); *In re Waite*, 140 Vt. 628, 630, 443 A.2d 462, 463 (1982) (where judge had not yet issued order incorporating terms of stipulation for sentence reduction at time defendant's probation officer objected to stipulation, judge acted properly in blotting out his signature on stipulation and denying sentence reconsideration following hearing; strong policy reasons support requirement of formal entry before decision matures into operative act, and court has undoubted right to alter entry to reflect its intended action). Further, the court expressly stated at the continued sentencing hearing why it had decided not to follow through on the probationary aspect of its original pronouncement of

sentence, and defense counsel took advantage of his opportunity to argue on behalf of defendant against the revised sentence. Thus, there was no due process violation.

*Affirmed.*