2006 VT 24

**STATE of Vermont v. Dwight TESTER, Sr.**

[895 A.2d 215]

No. 03-538

¶ 1. March 8, 2006. Defendant Dwight Tester, Sr., appeals from his conviction for aggravated sexual assault following a jury trial. He asserts that the trial court erred in admitting hearsay statements of the putative victim pursuant to Vermont Rule of Evidence 804a because the statements lacked sufficient indicia of trustworthiness, and they were taken in preparation of legal proceedings. Even assuming that the hearsay statements were properly admitted, defendant argues, the evidence was insufficient to support his conviction. Defendant also maintains that the trial court committed reversible error by allowing an investigator from the Department of Social and Rehabilitation Services (SRS) to testify that the victim's actions were "typical" of an abused child, thereby bolstering the victim's credibility. We reject these arguments, and affirm.

¶ 2. In April 2003, defendant was charged with aggravated sexual assault after allegedly inserting his finger into the genital opening of his daughter, D.T., born in May 1995.[1] The State later added a charge of lewd and lascivious conduct with a child. By motion, the State indicated its intent to introduce D.T.'s hearsay statements at trial, and pursuant to V.R.E. 804a, the court held a pretrial hearing to determine the statements' admissibility.

¶ 3. The following evidence was presented at the hearing. Joanne Gaffron-Hargrove testified that she had been D.T.'s therapeutic foster mother for approximately four months. On the morning of April 17, 2003, Ms. Gaffron-Hargrove informed D.T. that her visit with defendant had been cancelled, to which D.T. replied "good." D.T. stated that she hated defendant because he had asked her if Ms. Gaffron-Hargrove and her husband had "touched" her. Ms. Gaffron-Hargrove asked D.T. if she

---

[1] The State also initially charged defendant with a violation of conditions of release under 13 V.S.A. § 7559(e), but dismissed this charge before trial.

meant a "bad touch," and D.T. replied, "Yes, a bad touch." When Ms. Gaffron-Hargrove asked D.T. if defendant had ever touched her, D.T. replied that he had, but she was not supposed to talk about it. Ms. Gaffron-Hargrove testified that when D.T. made this statement her head went down, she did not maintain eye contact, and her body slumped.

¶ 4. D.T. later explained to Ms. Gaffron-Hargrove that she had been sleeping on a blow-up bed, and she heard defendant enter the room. Defendant knelt by the bed, and touched her vagina. When Ms. Gaffron-Hargrove asked D.T. if she had told anyone about the incident, D.T. replied that she had not told defendant's girlfriend, Amanda, because she "didn't want Amanda to leave." Ms. Gaffron-Hargrove explained to D.T. that they needed to report the incident, and D.T. replied, "Let's go right now." Ms. Gaffron-Hargrove testified that this reaction differed from past instances when D.T. had been caught telling lies.

¶ 5. Ms. Gaffron-Hargrove contacted SRS, and Janet Melke, an SRS investigator, subsequently contacted Detective William Hoyt of the Bellows Falls Police Department. Later that afternoon, Ms. Melke and Detective Hoyt interviewed D.T. at the SRS office. At the beginning of the interview, D.T. indicated that she understood the difference between the truth and a lie. After a series of questions, D.T. stated that she wouldn't feel safe staying with defendant. When asked why, D.T. became withdrawn, dropped her head, and replied that she didn't remember. D.T. acknowledged telling Ms. Gaffron-Hargrove that someone had done something to her that she did not like. When Detective Hoyt asked D.T. who she was talking about, D.T. became withdrawn, and said that she did not remember. D.T. later indicated that she was talking about defendant.

¶ 6. As a reprieve from direct questioning, Detective Hoyt asked D.T. to draw a picture of herself and her family. He then directed the conversation back to the alleged assault. Detective Hoyt asked D.T. to tell him about the incident; D.T. wanted Ms. Gaffron-Hargrove to speak on her behalf. Detective Hoyt testified that it was difficult to get beyond this back and forth, so he asked D.T. to identify statements made by Ms. Gaffron-Hargrove as true or false. Detective Hoyt wrote "Tell me a lie first" on a piece of paper, which he showed only to Ms. Gaffron-Hargrove. Ms. Gaffron-Hargrove then told a lie, which D.T. immediately identified as false. Ms. Gaffron-Hargrove then stated that D.T. had revealed to her that she did not want to visit defendant because he had touched her in a bad way. D.T. responded to this statement by saying, "That's the truth, that's what I had told Joanne this morning."

¶ 7. D.T. indicated that she had been touched with a "bad touch." When Detective Hoyt asked her what part of her body had been touched, D.T. stated that she did not want to say the word. Instead, she wrote down "V-G-I-N-U." When Detective Hoyt asked D.T. what word she was spelling, D.T. quietly said "vagina." Detective Hoyt asked D.T. who had touched her vagina, and she wrote down "dad." Detective Hoyt sought to confirm D.T.'s understanding of the word vagina, and he asked D.T. to identify the location of a vagina on a Barbie doll. D.T. asked if she could instead identify it on the picture that she had previously drawn, and she circled her sister's groin area. Detective Hoyt testified that D.T. made it very clear that she was talking about her own vagina.

¶ 8. Detective Hoyt asked D.T. if she could tell him what happened, and she indicated that she wanted to write it down. D.T. wrote "He came into my 'R'," and then drew an arrow to the picture of herself lying in a bed. Detective Hoyt asked D.T. what happened when defend-

ant had come into her room, and she wrote "He touched my vagina," although she spelled vagina as "V-G-I-A," and spelled touch as "T-U-S-H." Detective Hoyt confirmed that D.T. meant to say "he touched my vagina." D.T. indicated that defendant had touched her under her underpants. Detective Hoyt asked D.T. if she remembered whether the touch was inside or outside of her vagina. D.T. wrote down the word "in." D.T. then told Detective Hoyt that defendant had told her to go to bed and close her eyes. A few minutes later, he came into the room and knelt down beside her bed. She was on an air mattress, and he touched her vagina with his hand. D.T. explained that she knew it was defendant, although her eyes were closed, because his work boots made a lot of noise while he walked.

¶ 9. Detective Hoyt asked D.T. if she had told anyone else about this incident, and she said that she had not. He then asked her if she had discussed it with Amanda, and D.T. stated that she had not because she was afraid that Amanda would leave. Detective Hoyt testified that D.T. told him she was relieved to have talked about the incident, and she appeared relieved as well. At the end of the interview, Detective Hoyt asked D.T. if she remembered their conversation about truth and lying, and he confirmed with D.T. that she had told him the truth. Ms. Melke did not testify to the substance of D.T.'s interview, without objection, after the court indicated that her testimony would be repetitive.

¶ 10. At the close of the hearing, the court concluded that D.T.'s hearsay statements were admissible under Rule 804a(a), and it made findings on the record. The court found that D.T. was under the age of ten and that her statements were offered in a sexual abuse case where she was the putative victim. The court explained that the "time, content and circumstances of the statements" provided substantial indicia of

trustworthiness. It rejected the argument that the interviews had been leading. As the court explained, D.T.'s initial disclosure had been made in a secure setting to someone she trusted. Her statements after the initial disclosure were internally consistent as to where the incident occurred, how it occurred, where defendant had touched her, and why she had not told defendant's girlfriend about the incident. The court found that D.T.'s body language was consistent with how she was feeling — her head was down and her body was slumped. The court recognized that D.T. had had a problem with lying in the past, but it found that D.T.'s behavior in this case was completely different from instances in which she had been caught lying. Additionally, the court explained, D.T.'s lies in the past had not implicated others.

¶ 11. The court found that the interview at SRS had been conducted properly. As the court explained, D.T. had a difficult time expressing what had happened to her, but once she began talking about the incident, her statements were consistent. D.T. indicated her ability to distinguish between the truth and a lie, and the court found nothing to indicate that her statements were untrustworthy merely because they had been written down. Indeed, the court found that this made them even more trustworthy in light of D.T.'s age. The court therefore concluded that D.T.'s statements possessed sufficient indicia of reliability. Turning to the requirement that statements not be "taken in preparation for a legal proceeding," the court explained that the fact that an SRS investigator or police officer interviewed a child did not necessarily mean that the resulting statements were gathered in preparation for a legal proceeding. The court also rejected defendant's assertion that D.T.'s statements must be excluded because there were ongoing family court pro-

ceedings at the time that the statements were taken. Thus, having found that the requirements of Rule 804a(a) were satisfied, the court found D.T.'s hearsay statements admissible at trial.

¶ 12. Ms. Gaffron-Hargrove, Ms. Melke, and Detective Hoyt testified to D.T.'s hearsay statements at trial. At the close of the State's case, defendant moved for a judgment of acquittal, asserting that his presumption of innocence could not be overcome by D.T.'s hearsay statements because she had a problem with lying. The court denied defendant's motion, finding the evidence sufficient to support a guilty verdict.

¶ 13. D.T. testified after being called by defendant. She stated that defendant had hurt her. When asked how, she testified that she did not remember. D.T. acknowledged that she had told Ms. Gaffron-Hargrove that defendant had touched her vagina. She reiterated that defendant had touched her, but testified that she did not know how he had touched her. Defendant testified on his own behalf, denying that he had sexually assaulted D.T. At the close of the evidence, defendant renewed his motion for judgment of acquittal, which the court denied. The jury found defendant guilty of both charges against him, although, at the State's request, the court entered a finding of guilty only on the aggravated sexual assault charge.

¶ 14. In a post-judgment motion for judgment of acquittal, defendant asserted that the evidence did not support his conviction because D.T. had testified only that defendant had touched her vagina, and touching without intrusion was insufficient to sustain an aggravated sexual assault conviction. The court denied the motion, explaining that although D.T. had not discussed penetration while testifying, the jury had the Rule 804a statements that she had made to other witnesses prior to trial. The court found that these statements were properly considered by the jury as substantive evidence and they provided a sufficient basis for a guilty verdict on the aggravated sexual assault charge. This appeal followed.

¶ 15. We begin with defendant's assertion that the trial court erred in admitting D.T.'s hearsay statements.[2] Rule 804a allows a witness to testify to hearsay statements made by a child ten years old or younger if the statements are offered in a sexual abuse case where the child is an alleged victim, the statements were not taken in preparation for a legal proceeding, the child is available to testify, and the "time, content and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a)(1)-(4). The trial court "has great discretion in admitting or excluding evidence under the rule, and we will not reverse such decisions unless there has been an abuse of discretion resulting in prejudice." *State v. Fisher*, 167 Vt. 36, 39, 702 A.2d 41, 43 (1997).

¶ 16. Defendant first argues that D.T.'s statements should have been excluded because they lacked sufficient indicia of reliability. According to defendant, D.T.'s initial disclosure resulted from a series of leading questions. Additionally, defendant argues, D.T.'s history of lying rendered her statements suspect. As to the SRS interview, defendant maintains that Ms. Gaffron-Hargrove, rather than D.T.,

---

[2] In a pro se brief, defendant asserts that D.T.'s hearsay statements should have been excluded because their admission violated his confrontation rights, citing *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* is inapposite because D.T. testified at trial. See *id.* at 60 n.9 ("The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

disclosed what occurred and D.T.'s remaining statements were made in response to leading questions. Defendant also asserts that there was an inconsistency in the written reports of Detective Hoyt and Ms. Melke, which further demonstrates that D.T.'s statements were unreliable and should have been excluded.

¶ 17. The trial court concluded otherwise, and it made numerous findings in support of its conclusion. We need not reiterate all of the court's findings here. We note, however, that the court specifically found that neither interview was leading, and it rejected defendant's assertion that D.T.'s statements should be excluded because she had lied in the past. In support of its conclusion, the court explained that D.T.'s initial disclosure had been made to someone she trusted, in a place where she felt safe. Her subsequent statements were consistent with her initial disclosure. Her body language reflected how she was feeling, and her behavior differed from past instances where she had been caught lying. The court's findings are supported by the record, and they support the court's conclusion that D.T.'s statements possessed sufficient indicia of reliability so as to be admissible under Rule 804a. See *State v. Gallagher*, 150 Vt. 341, 348, 554 A.2d 221, 225 (1988) (this Court will uphold trial court's finding that hearsay statements are trustworthy under Rule 804a(a)(4) if finding is supported by credible evidence in the record); see also *Kanaan v. Kanaan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995) (recognizing that trial court's findings are entitled to wide deference on review because trial court is in unique position to assess the credibility of witnesses and weigh the evidence presented).

¶ 18. We reject defendant's assertion that an alleged inconsistency in the written reports of Ms. Melke and Detective Hoyt regarding what D.T. was wearing during the alleged assault undermines the trial court's conclusion that D.T.'s statements possessed sufficient indicia of reliability. First, it is not apparent that the statements identified by defendant are necessarily inconsistent. More importantly, defendant did not raise this argument during the Rule 804a hearing, and, indeed, Ms. Melke's report was not admitted into evidence at the hearing, nor did she testify at the hearing regarding D.T.'s interview. Even assuming that the reports contain an inconsistency, it would not undermine the court's conclusion, based on numerous findings, that D.T.'s statements exhibited sufficient indicia of trustworthiness so as to be admissible under Rule 804a. We find no abuse of discretion.

¶ 19. We turn next to defendant's assertion that the trial court erred in finding that D.T.'s statements to Detective Hoyt and Ms. Melke were not taken in preparation for a legal proceeding. According to defendant, the primary purpose of the SRS interview was to bring criminal charges against him, not to protect D.T. Defendant also notes that SRS contacted police in the jurisdiction where the act allegedly occurred, which he maintains is evidence that SRS had already determined that a crime had been committed.

¶ 20. To determine if a child's statements were taken in preparation for a legal proceeding, "we must look to the totality of the circumstances to determine whether the interviews were primarily to investigate the allegations or primarily to prepare a legal action against the accused." *Fisher*, 167 Vt. at 42, 702 A.2d at 45. On review, "the factual circumstances as interpreted by the trial court must govern," and we will not disturb them unless they are clearly erroneous. *State v. Blackburn*, 162 Vt. 21, 24, 643 A.2d 224, 226 (1993). Here, the trial court properly concluded, based on the totality of the circumstances, that D.T.'s

statements were not taken in preparation for a legal proceeding.

¶ 21. As defendant acknowledges, the commencement of an SRS investigation "does not necessarily trigger the commencement of legal proceedings, even though the investigation often results in criminal charges against an accused." *Id.* at 24, 643 A.2d at 225. This is because SRS investigations serve the primary purpose of protecting children, not gathering evidence to incriminate or exonerate suspects. *Id.* at 24, 643 A.2d at 225-26; see also *Fisher*, 167 Vt. at 42, 702 A.2d at 45 ("The focus of an SRS investigation is not to make a case against the accused, but to ascertain the reliability of the accusations so the child can, if necessary, be protected."). Similarly, the participation of police officers during the interview process does not necessarily indicate that a child's statements were gathered in preparation for a legal proceeding. See *Fisher*, 167 Vt. at 42, 702 A.2d at 45 (recognizing that "statements taken by police officers are often investigatory"). As we explained in *Blackburn*, it is "reasonable to have the police investigate directly and not base criminal action on SRS's merely telling the police about the child's statements." 162 Vt. at 25, 643 A.2d at 226.

¶ 22. Defendant maintains that the primary purpose behind the SRS interview in this case could not have been D.T.'s protection because D.T. was already in SRS custody and her visits with defendant were supervised. We reject defendant's premise that, just because a child is in SRS custody, the primary purpose of an interview cannot be investigatory. In this case, at minimum, if D.T.'s claims were substantiated, supervised visitation with defendant would cease. We also find no merit in defendant's assertion that because SRS contacted the police in the appropriate jurisdiction, D.T.'s statements were necessarily taken in preparation for a legal pro-

ceeding. This argument is belied by our case law, and by the totality of the circumstances present in this case. In *Fisher*, as in this case, SRS investigators contacted police in the jurisdiction where the abuse had allegedly occurred, and requested assistance with the investigation. 167 Vt. at 42, 702 A.2d at 45. We found this act to be additional evidence that the subsequent interview conducted by police and SRS was investigatory. *Id.* We see no reason to conclude otherwise here.

¶ 23. We have previously held that statements derived from a child's fourth interview with SRS investigators and police, which was conducted at the police station and videotaped, were not taken in preparation for legal proceedings. *Blackburn*, 162 Vt. at 25, 643 A.2d at 226. We have also held that statements gathered during a child's initial interview with SRS and police, which was held within a week of the initial disclosure to SRS, were not taken in preparation for a legal proceeding. *Fisher*, 167 Vt. at 42, 702 A.2d at 45. Even more compelling, in this case, D.T.'s statements were derived from her first interview with police and SRS investigators, and the interview occurred on the same day as D.T.'s initial disclosure to Ms. Gaffron-Hargrove. The totality of the circumstances in this case supports the conclusion that SRS and police were investigating D.T.'s allegations at the time of her interview, not preserving her statements for an anticipated legal proceeding. Cf. *Blackburn*, 162 Vt. at 25, 643 A.2d at 226 ("Where the child's testimony against a potential defendant is clear and consistent and further interviews simply repeat or preserve what has already been said, the only reasonable view may be that preparing legal proceedings was the primary focus."). We therefore find no abuse of discretion in the court's determination that D.T.'s statements to Ms. Melke and

Detective Hoyt were admissible under Rule 804a.

¶ 24. Defendant next asserts that the court erred in denying his motion for judgment of acquittal because, even assuming that D.T.'s hearsay statements were properly admitted, they were insufficient to establish his guilt. Defendant argues that D.T.'s hearsay statements cannot support his conviction because they were unreliable, there was no corroborating evidence presented at trial, and, to the extent that he was able to cross-examine D.T., her response was almost uniformly "I don't know," or "I don't remember." In support of his assertion, defendant relies on *State v. Robar*, where we held that the State could not meet its burden of proof in a burglary case where the sole evidence on which it relied was past recollection recorded or prior inconsistent statements, unless those statements met "specific standards of reliability." 157 Vt. 387, 395, 601 A.2d 1376, 1380 (1991).

¶ 25. We review the trial court's denial of a motion for judgment of acquittal to determine if "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Delisle*, 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (internal quotations and alterations omitted). We find the evidence sufficient to support defendant's conviction here.

¶ 26. To prove defendant's guilt of aggravated sexual assault under 13 V.S.A. § 3253, the State needed to show that defendant engaged in a sexual act with D.T., which in this case required proof of an intrusion, however slight, by any part of defendant's body into D.T.'s genital opening. The State met its burden of proof. At trial, Detective Hoyt testified that D.T. wrote down the word "in" when

asked where defendant had touched her vagina.

¶ 27. Defendant maintains that D.T.'s hearsay testimony was nonetheless insufficient under *Robar* to support his conviction. We rejected a similar argument in *State v. Cameron*, 168 Vt. 421, 424-26, 721 A.2d 493, 496-97 (1998). In that case, defendant was charged with three counts of aggravated sexual assault, and one count of lewd and lascivious conduct with a child. The State's evidence at trial consisted largely of Rule 804a hearsay testimony, although the child-victims also testified. As in this case, one of the children's trial testimony was insufficient to support the aggravated sexual assault charges, but the child's hearsay statements sufficed. *Id.* at 424-25, 721 A.2d at 496-97. We upheld defendant's conviction.

¶ 28. In reaching our conclusion, we noted that the defendant did not challenge the reliability of the hearsay statements, nor his ability to cross-examine the child at trial. *Id.* at 424-25, 721 A.2d at 496. We concluded, nonetheless, that the Rule 804a hearsay statements bore sufficient indicia of reliability to support the defendant's conviction. *Id.* at 425, 721 A.2d at 497. As we explained, the child's interview at SRS occurred shortly after her initial disclosure of the incident; the trial court found that the interview had been conducted in a highly professional manner, without suggesting answers or content; the child's statements were consistent with statements that she had made to others; and the child responded in age-appropriate language, which suggested that she had not been coached or coerced. *Id.* at 425, 721 A.2d at 496-97. Additionally, we explained that the alleged improper contact that the child described during the interview was corroborated at that time by her gestures and demonstrations with anatomically correct dolls. *Id.* at 425, 721 A.2d at 497. Finally, we found that defense counsel

had had an adequate opportunity to cross-examine the child regarding her failure to recollect the sexual contact that she had described to the SRS interviewer. *Id.* We therefore found the evidence sufficient to fairly and reasonably support defendant's guilt beyond a reasonable doubt. *Id.*

¶ 29. We are faced with an analogous situation here. Although defendant argues that D.T.'s statements are unreliable, the trial court found otherwise. As previously discussed, this finding is supported by credible evidence in the record. Cf. *State v. LaBounty*, 168 Vt. 129, 142-43, 716 A.2d 1, 10 (1998) (declining to address defendant's argument that Rule 804a hearsay evidence was insufficient to support conviction under *Robar* based on trial court's finding, which was supported by the evidence, that children's statements bore sufficient indicia of trustworthiness under Rule 804a(a)(4)). We have not required that corroborating evidence exist before Rule 804a hearsay statements may be used as direct evidence of a defendant's guilt. See *Cameron*, 168 Vt. at 425-26, 721 A.2d at 497 ("[S]urely [Rule 804a] must be allowed to support a conviction when the child's in-court testimony is insufficient to establish the elements of the offense. Otherwise, the only time it would apply would be when it was needed least — when the child was able to describe the abuse in court."). In any event, as in *Cameron*, D.T.'s description of the alleged assault was corroborated at the time by her drawings and her written statements. Finally, as in *Cameron*, defendant here had an adequate opportunity to cross-examine D.T. regarding her inability to remember the details of the assault that she had described during the SRS interview. Thus, viewing the evidence in the light most favorable to the State, and excluding modifying evidence, we conclude that the evidence presented at trial fairly and reasonably supports a finding of defend-

ant's guilt beyond a reasonable doubt. We therefore find no error in the trial court's denial of defendant's motion for judgment of acquittal.

¶ 30. Finally, we turn to defendant's assertion that the court committed reversible error by allowing Ms. Melke to testify that D.T.'s actions were "typical" of children who had been abused by someone close to them, thereby bolstering D.T.'s credibility and reliability. Defendant maintains that this testimony undercut the jury's function as a factfinder.

¶ 31. We disagree. The record shows that defense counsel asked Ms. Melke if D.T. had shown affection to defendant, if she was afraid of him, or if D.T. had given any indication that she hated defendant. On redirect examination, the State asked Ms. Melke to describe the type of emotions that an abused child might exhibit. Defendant objected, arguing that expert testimony was required. The State responded that defendant had implied that if D.T. had been abused, she would not have behaved affectionately toward defendant. The court overruled defendant's objection, explaining that Ms. Melke had already testified to her experience in investigating these kinds of cases and had already given opinions about what was usual and unusual in such cases. The court found the State's line of questioning appropriate as defense counsel had asked how D.T. behaved around defendant. Ms. Melke then testified that children who have been abused by a parent exhibit a range of emotions, and D.T.'s actions were "typical." Ms. Melke explained that during supervised visitation D.T. would sometimes be affectionate with defendant and at other times did not want to have anything to do with him.

¶ 32. The court's admission of this testimony does not constitute reversible error. "What is prohibited is an expert going beyond merely relating the victim's

account under Rule 804a and vouching for the declarant's credibility." *Fisher*, 167 Vt. at 44, 702 A.2d at 46. Ms. Melke's statement that children who have been abused by a parent exhibit a range of emotions, and that D.T.'s actions were "typical," is not a direct comment on D.T.'s credibility. See *State v. Catsam*, 148 Vt. 366, 369-70, 534 A.2d 184, 187 (1987) (recognizing that expert testimony regarding profile or syndrome evidence in child sexual assault cases can assist the jury in understanding the evidence, and finding it within the trial court's discretion to admit such evidence in appropriate circumstances); see also *State v. Hicks*, 148 Vt. 459, 462, 535 A.2d 776, 777 (1987) ("The behavioral patterns of child victims of sexual abuse are generally not known to the average juror and are therefore a proper subject for expert testimony."). This case is not like *Catsam*, where we found error in the court's admission of expert testimony that children who suffer from post-traumatic stress disorder generally do not lie about being abused. 148 Vt. at 370-71, 534 A.2d at 187-88. Ms. Melke did not vouch for D.T.'s veracity, nor did she act as an "ultimate truth detector." See *State v. Weeks*, 160 Vt. 393, 400, 628 A.2d 1262, 1265-66 (1993) (finding plain error where expert went "far beyond merely relating the victim's account of the abuse," and acted as "ultimate truth detector" by both implicitly and explicitly vouching for victim's story) (internal quotations omitted). We find no error.

*Affirmed.*