2005 VT 28

**In re Emmanuel KOVEOS**

[872 A.2d 321]

No. 03-488

¶ 1. February 18, 2005. Petitioner Emmanuel Koveos appeals the superior court's order denying his petition for post-conviction relief. He argues that (1) his constitutional right to confront his accusers was violated when his trial counsel deposed a witness without his knowledge, presence, or consent, and the witness's videotaped deposition provided inculpatory evidence that was admitted at trial in lieu of live testimony; (2) his trial counsel's performance fell below a standard of reasonable competency and affected the outcome of his trial; and (3) he was constructively denied counsel. We find no error and thus affirm the superior court's denial of the petition.

¶ 2. Petitioner was charged with lewd or lascivious conduct with a child, in violation of 13 V.S.A. § 2602, for molesting a twelve-year-old girl, A.M., while giving her and two younger girls a Greek lesson at the church where he was a priest. Before trial, petitioner's trial counsel sought to depose the older of the other two girls, K.F., but the child's parents filed a motion for a protective order supported by an affidavit in which the child's father stated that K.F. had no personal first-hand knowledge of any crime that petitioner may have committed against A.M. on the day in question. Eventually, the parties agreed that defense counsel could depose K.F. as long as petitioner was not present and a videotape of the deposition could be used at trial in lieu of live testimony. As it turned out, during her deposition, K.F. provided testimony that was highly favorable to the prosecution. She stated that she saw petitioner rub A.M.'s back and hold her hand before

taking her to his office. She also stated that A.M. appeared very nervous and on the verge of tears while the touching was taking place, and that both A.M. and her mother were very upset and crying in the car on the way home from the lesson. The State commenced its prosecution of petitioner by playing a redacted form of the videotaped deposition for the jury.

¶ 3. Through K.F.'s deposition, petitioner's own statements made to police, and the testimony of A.M. and her mother, the State presented evidence at trial showing that petitioner rubbed A.M.'s back and held her hand in the presence of the other two girls before taking A.M. to his office, where he touched her breast, inner thigh, and crotch. Defendant testified at trial that he never touched A.M. with the purpose of gratifying himself sexually. The jury returned a guilty verdict, and this Court affirmed the conviction in *State v. Koveos*, 169 Vt. 62, 732 A.2d 722 (1999).

¶ 4. Following our affirmance of the conviction, petitioner sought post-conviction relief, arguing that he had received ineffective assistance of counsel at trial. Petitioner claimed, among other things, that his trial counsel failed to protect his constitutional rights in conducting K.F.'s videotaped deposition, failed to challenge the State's threat to introduce a prior bad act if he put on evidence suggesting that his contact with A.M. was a misunderstanding, failed to insist on characterizing a prior ceremony conducted for A.M. as an exorcism, failed to preserve issues for appellate review, and failed to communicate with his client about trial strategy. The superior court ruled that petitioner's trial counsel had acted reasonably in her handling of the prior bad act and exorcism issues, and that petitioner had not demonstrated prejudice with respect to his trial counsel's failure to communicate with him regarding trial strategy or her handling of K.F.'s deposition.

¶ 5. On appeal, petitioner first argues that his constitutional right to confront the witnesses against him was violated when K.F.'s deposition was held without his knowledge, attendance, or consent, and then admitted at trial in lieu of the witness's live testimony. He maintains that, before admitting the videotaped deposition into evidence, the trial court was required to make findings demonstrating that deposition testimony in lieu of live testimony was necessary to protect K.F. Further, he challenges the trial court's finding that no prejudice resulted from his trial counsel's handling of K.F.'s deposition. In so doing, he cites *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 34 (2002), for the proposition that a confrontation clause error resulting in a criminal conviction is reversible error only if the reviewing court finds that the error was harmless beyond any reasonable doubt. According to petitioner, placing the burden on him to demonstrate prejudice would put him in the impossible position of attempting to explain how he would have reacted to a witness if he had not been deprived of his constitutional right to confront the witness.

¶ 6. Petitioner's confrontation clause argument is presented as if it were made on direct appeal rather than through collateral attack in a PCR petition. "The standard for showing harmless error on collateral review is considerably less favorable to the petitioner than the standard applicable on direct review." *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir. 2002). Post-conviction relief is not a substitute for appeal, but rather a limited remedy requiring petitioner to demonstrate by a preponderance of the evidence that fundamental errors rendered his conviction defective. *In re Grega*, 2003 VT 77, ¶ 6, 175 Vt. 631, 833 A.2d 872 (mem.). Specifically, a petitioner claiming ineffective assistance of counsel has the burden of showing, "by a preponderance of the evidence that: (1) his counsel's perform-

ance fell below an objective standard of performance informed by prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome." *Id.* ¶ 7. Further, if the superior court's "findings are supported by any credible evidence, and the conclusions reasonably follow therefrom, this Court will not disturb the trial court's judgment." *Id.* ¶ 6. Thus, petitioner is incorrect in arguing that he is entitled to post-conviction relief unless we find that his trial counsel's shortcomings were harmless beyond a reasonable doubt.

¶ 7. Instead, we must determine whether the superior court erred in concluding that none of the alleged shortcomings in trial counsel's performance affected the outcome of petitioner's trial. The superior court concluded that, given petitioner's principal defense strategy of denying that anything like what A.M. described actually occurred, defense counsel acted reasonably in deciding to pursue K.F.'s deposition. Indeed, the court agreed with the State's expert that it would have been ineffective representation for petitioner's counsel not to have pursued K.F.'s deposition. Nevertheless, the court concluded that defense counsel provided ineffective representation by failing to fully discuss the deposition with petitioner. The court also stated that defense counsel failed to conduct K.F.'s deposition with the understanding that it would be preserved for trial, noting that defense counsel failed either to stop the questioning once she realized that the evidence would be damaging to her client or to ask the court to overturn the parties' stipulation that the deposition could be used at trial in lieu of live testimony. The court concluded, however, that exclusion of the videotaped deposition would not have affected the outcome of the trial, given the other evidence supporting the jury's verdict.

¶ 8. The record supports this conclusion. Without question, K.F.'s videotaped deposition testimony was highly favorable to the State. Not only did the testimony corroborate part of A.M.'s account of what happened, but it was elicited by petitioner's own attorney. As petitioner points out, the prosecution itself described the deposition as crucial evidence. On the other hand, although the deposition helped the State by generally corroborating A.M.'s story, "it was far from determinative." *Koveos*, 169 Vt. at 69, 732 A.2d at 727. Indeed, K.F.'s testimony did not concern the conduct that was the essence of the State's charge. *Id.* K.F. may have seen petitioner rub A.M.'s back and characterized this conduct as "abuse" because of A.M.'s reaction to it, but she did not observe petitioner touch the victim's inner thigh or crotch because she was not present in petitioner's office when that conduct allegedly occurred.

¶ 9. Moreover, in contrast to the limited nature of K.F.'s testimony, the other evidence supporting petitioner's conviction was substantial. A.M. herself testified in great detail about the abuse. Further, A.M.'s account was corroborated by her mother's testimony concerning A.M.'s excited utterances shortly after the alleged abuse took place. A.M.'s account was also corroborated in part by petitioner's own statements through the testimony of an investigating police officer and a letter of apology written by petitioner. Given this other evidence, we decline to overturn the superior court's conclusion that, even discounting K.F.'s deposition, the jury was likely to have reached the same verdict. As the trial court found, defense counsel acted reasonably in seeking to depose K.F. under the circumstances, and petitioner failed to make any proffer as to what he would have done, and how that would have affected the outcome of his case, had he been notified of his attorney's intention to depose K.F. Once it became clear that

K.F. had inculpatory evidence to give, that evidence was going to come in one way or another. While it may have been more damaging to petitioner for the evidence to be presented through the direct questioning of his own attorney, petitioner has failed to demonstrate by a preponderance of the evidence that the outcome of the trial would have been different absent the deposition.

¶ 10. Next, petitioner argues that his trial counsel's failure to keep him informed of several important developments during trial warrants post-conviction relief. Specifically, petitioner refers to his attorney's failure to communicate with him about K.F.'s deposition, his "cultural misunderstanding" defense, and A.M.'s previous exorcism ceremony. We have already concluded that the superior court did not err in ruling that petitioner failed to show actual prejudice as the result of the handling and admission of K.F.'s deposition without his knowledge, participation, or consent. As for the other two instances cited by petitioner, the court assumed for purposes of argument that petitioner's trial counsel failed to communicate with petitioner, but nevertheless concluded that any failure to communicate did not make a difference in the outcome of the trial. Regarding A.M.'s previous "exorcism" ceremony, petitioner complains that his trial counsel should have conferred with him before abandoning the position that the exorcism ceremony showed the tendency of A.M.'s parents to overreact to situations. Petitioner fails, however, to cite any evidence that would support characterizing the ceremony, which was intended to help A.M. through difficult times at school, as an exorcism rather than a blessing. In any event, the probative value of labeling the ceremony as an exorcism is minimal with respect to the charged crime.

¶ 11. Regarding the "cultural misunderstanding" defense, apparently petitioner and his attorney contemplated establishing the defense that his contact with A.M. was a misunderstanding stemming from his "touchy-feely" Mediterranean cultural heritage rather than his desire to gratify himself sexually. The State filed a notice of intent to introduce evidence of a prior bad act concerning a 1988 incident in which petitioner had allegedly sexually assaulted a woman seeking pastoral counseling. Petitioner sought to exclude the evidence through a motion in limine, which the trial court granted. The court warned petitioner, however, that it would reconsider its ruling should he raise the issue of intent or mistake during trial. At trial, defense counsel sought to introduce testimony suggesting that the touching incident was a misunderstanding due to cultural differences. Defense counsel asked the trial court in advance if the introduction of such testimony would open the door for the State to introduce evidence concerning the 1988 incident. The court indicated that it would, and defense counsel abandoned this approach, presumably without consulting with petitioner. Petitioner claims that if his counsel had consulted with him, he could have told her that the woman who accused him of sexual assault years earlier was a heroin addict and not credible. At the PCR hearing, notwithstanding its presumption that defense counsel failed to communicate with petitioner about the matter, the superior court concluded that defense counsel acted reasonably in not risking introduction of the prior bad act, which would have been devastating evidence against petitioner in this case. This reasoning is sound, and petitioner has failed to provide any basis for questioning it.

¶ 12. Finally, petitioner briefly argues that the trial court should have presumed prejudice in this case because he was constructively denied counsel at trial. We find no constructive denial of counsel. As the superior court noted, petitioner faced

a significant dilemma in that his best defense risked the introduction of devastating evidence against him — the prior sexual assault. Nonetheless, his trial counsel cross-examined the State's witnesses, called him to testify in his own defense, and raised a reasonable defense under difficult circumstances. We find unavailing petitioner's reliance on *Powell v. Alabama*, 287 U.S. 45, 58 (1932), in which the United States Supreme Court presumed, without examining the attorney's performance at trial, that the defendants were deprived of their right to counsel. In that case, the young and illiterate African-American defendants were accused of raping two Caucasian girls in Alabama in 1931. At the defendants' arraignment, the trial judge appointed all of the members of the local bar to represent them, but it was not until the very morning of the one-day trial, which resulted in death sentences for the defendants, that an out-of-state lawyer who had not been able to prepare for the case was definitely designated to represent the defendants. The situation in this case is plainly not comparable. Because petitioner was unable to show a reasonable probability that his trial counsel's shortcomings affected the outcome of his trial, the superior court properly denied his petition for post-conviction relief. See *Grega*, 2003 VT 77, ¶ 7 (unless petitioner is able to satisfy both prongs of test for demonstrating ineffective assistance of counsel, it cannot be said that conviction was unreliable due to breakdown in adversarial process).

*Affirmed.*