923 A.2d 622 (2007)
2007 VT 40
STATE of Vermont
v.
Dwight TESTER, Sr.
No. 06-051.
Supreme Court of Vermont.
May 11, 2007.
*623 David W. Gartenstein, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.
Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. DOOLEY, J.
Defendant Dwight Tester, Sr., was convicted after a jury trial of aggravated sexual assault of his daughter, D.T. While his direct appeal was pending, defendant moved for a new trial under Vermont Rule of Criminal Procedure 33 on the grounds of newly discovered evidence. The trial court denied his motion, concluding that there was no reasonable probability that defendant's proffered evidence would have changed the outcome of his trial. Defendant *624 appealed, arguing that the court erred in evaluating the relevance and admissibility of the evidence. We affirm.
¶ 2. The record indicates the following. Defendant was charged with aggravated sexual assault in April 2003. The State relied on D.T.'s hearsay statements at trial to establish defendant's guilt. Its evidence showed that in April 2003, when D.T. was seven years old, she told her foster mother that defendant had come into her room, knelt by her bed, and touched her vagina. See State v. Tester, 2006 VT 24, ¶ 4, 179 Vt. 627, 895 A.2d 215 (mem.). Following this disclosure, D.T. was interviewed by a Bellows Falls police detective, and an investigator with the Department for Children and Families (DCF). At the interview, D.T. reiterated that defendant had come into her room and touched her, and she indicated that the touch was "inside" her vagina. Id. ¶ 8. The assault apparently occurred at defendant's home in Bellows Falls, not long after D.T. and several siblings relocated to Vermont from Texas, where they had been living with their mother. We affirmed defendant's conviction on appeal, concluding that D.T.'s hearsay statements were properly admitted at trial, and that the evidence was sufficient to establish defendant's guilt. Id. ¶ 1.
¶ 3. In October 2004, more than one year after his conviction and during the pendency of his direct appeal, defendant filed a Rule 33 motion for a new trial. He asserted that he had just discovered a videotaped interview of D.T. and her older sister K.T., which took place on December 3, 2002, approximately four months before he allegedly sexually assaulted D.T. Defendant argued that the videotape was exculpatory evidence that the State was constitutionally obligated to disclose under V.R.Cr.P. 16 and Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the State's failure to disclose this evidence entitled him to a new trial.
¶ 4. The court denied defendant's motion after a hearing. It made the following findings. D.T. and K.T. were interviewed at the Springfield DCF office in December 2002 at defendant's prompting. One week earlier, defendant had described alleged acts of sexual abuse perpetrated against D.T. by "her mother's boyfriend" to a detective in the Springfield Police Department. At that time, defendant expressly acknowledged the children's upcoming DCF interview.
¶ 5. The children's interview was conducted by the Springfield detective and the same DCF investigator who would later interview D.T. about her allegation that defendant sexually assaulted her. The interview focused on whether the children had been abused by their mother or her boyfriends while they were living in Texas. The interview consisted mainly of conversation between K.T. and the police detective. K.T. described abuse and neglect in their mother's home. She stated that her mother told her about sex and had sex in front of her. K.T. theorized that D.T. had engaged in inappropriate sexual contact with their younger brother because her mother had "taught her" such behavior. K.T. also stated that one of her mother's friends had touched her.
¶ 6. D.T. spent most of the time during the interview playing with toys and wandering around the room. Her statements were limited, but included descriptions of physical abuse by her mother, description of an incident where she was in the bathroom and one of her mother's adult male friends came in and pulled down his pants and boxers, a statement that her brother stabbed the friend in the leg, a statement that the friend "touched me," and a nodding-of-the-head response to a question whether D.T.'s mother had taught her to *625 engage in conduct that included improperly touching her brother.
¶ 7. The Springfield detective forwarded copies of the videotaped interview to law enforcement authorities in Texas. The DCF investigator retained an audiotape of the interview, which she turned over to a staff person at the Springfield DCF office responsible for such items. The tape was not made part of the children's file or the family's DCF file, but was instead placed in a box of similar taped interviews that related to many Springfield DCF cases. Neither the DCF investigator nor the Springfield detective made any report to the Windham County State's Attorney's office or to the Bellow Falls Police Department regarding this interview until June 2004, when defendant requested a copy of the videotape. The record does not indicate whether such a report would be normal, but we note that the Town of Springfield is in Windsor, not Windham, County.
¶ 8. As noted above, in April 2003, the Bellows Falls police detective interviewed D.T. with respect to the instant case, and the same DCF investigator was also present. The Bellows Falls detective did not learn that D.T. had been previously interviewed by the Springfield detective and the DCF investigator until June 2004, when, at defendant's request, he was asked to obtain any tape or other record of such an interview by the Windham County's State's Attorney's Office.
¶ 9. Based on these and additional factual findings, the court turned to defendant's legal arguments. While defendant filed his motion for a new trial based on "newly discovered evidence" under Rule 33, he argued that the State had committed a Brady violation by failing to disclose the videotape, and that the suppression of this information caused a due process violation sufficient to warrant a new trial. The court evaluated the evidence in light of the standard applicable to this claim. It explained that under Brady and its progeny, if the State failed to disclose exculpatory evidence in its possession, a new trial would be warranted only if the omitted evidence was material, that is, if "there is `a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Petrillo, 821 F.2d 85, 88-89 (2d Cir.1987) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)); see also United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
¶ 10. In this case, the court explained, D.T.'s credibility was the sole issue at trial. Thus, if the State failed to disclose any evidence that directly bore on her credibility, it was potentially exculpatory, and if such evidence was in fact material, then a new trial would be required. The court found D.T.'s statements regarding physical abuse and neglect by her mother irrelevant to any of the issues at trial. The only arguably relevant statements, the court explained, were D.T.'s very equivocal statements about whether her mother may or may not have "taught her" to engage in sexualized behavior by engaging in sexual activities in her presence and her claims that: (1) mother's adult male friend came into the bathroom while D.T. was there and pulled down his pants and boxers; (2) the friend touched her; and (3) she touched her little brother in sexual ways. The court concluded that all of these statements related to D.T.'s "prior sexual conduct," and thus, would have been inadmissible at trial under the rape-shield statute, 13 V.S.A. § 3255.
¶ 11. In reaching its conclusion, the court rejected defendant's assertion that D.T.'s statements provided evidence that she may have been mistaken as to who assaulted her or that mother's adult friend, *626 or some other person in Texas, committed the alleged offense. As the court explained, identity was not at issue in defendant's trial. D.T. repeatedly and clearly identified defendant as the person who touched her, and the fact that D.T. may have also been sexually assaulted by another man while in her mother's care was simply irrelevant. The court thus concluded that defendant's motion was without merit. This appeal followed.
¶ 12. Defendant argues that the trial court erred in denying his motion because it failed to consider K.T.'s statements in its analysis, and it erred in concluding that certain evidence would have been inadmissible. According to defendant, both children's statements were relevant and material because they could have been used to challenge the admissibility of D.T.'s hearsay statements before trial, and they could have been used as impeachment evidence during trial. Defendant maintains that the admission of the videotape also would have allowed the jury to see and hear D.T. and her sister, and to contrast D.T.'s demeanor and acuity on the videotape with her trial testimony. Defendant argues that evidence about abuse and neglect was relevant as "context" evidence, that part of the videotape evidence is not barred by the rape-shield statute, and that the remainder must be admitted despite the statute to protect defendant's constitutional confrontation right.
¶ 13. Although we adopt a different reason, we affirm the district court's decision.[*] In evaluating defendant's claim, we must first identify what he is required to prove to prevail. These elements have become somewhat confused because defendant has argued that he is entitled to a new trial due to the State's violation of its obligation under Brady. In these circumstances, defendant has generally argued that the demonstration of a Brady violation is enough to obtain a new trial and he does not additionally have to prove the new-trial elements set out in Rule 33. The State has taken the opposite side of this argument, asserting in part that defendant was required to prove the elements for a new trial set out in Rule 33 and he failed to do so.
¶ 14. To support his claim of a Brady violation, defendant needed to show that: (1) the State suppressed evidence; (2) the evidence was favorable to him because it was either exculpatory or impeaching; and (3) he was prejudiced as a result of the suppression. State v. LeClaire, 2003 VT 4, ¶ 8, 175 Vt. 52, 819 A.2d 719. To warrant a new trial on the basis of newly discovered evidence under Rule 33, defendant needed to establish all of the following: (1) the new evidence would probably change the result upon retrial; (2) the new evidence was discovered after trial; (3) the evidence could not have been discovered sooner through due diligence; (4) the evidence was material; and (5) the evidence was not merely cumulative or impeaching. State v. Smith, 145 Vt. 121, 131, 485 A.2d 124, 130-31 (1984).
¶ 15. Although the elements of the Brady violation and those required for a new trial overlap, they are not the same and even appear inconsistent with respect to impeachment evidence. Nevertheless, *627 relying on this Court's decision in State v. Sird, 148 Vt. 35, 528 A.2d 1114 (1987), the State argues that defendant must show all of the elements of a new-trial motion and a Brady violation to prevail. It particularly draws on the holding of Sird that the failure to disclose the criminal record of a witness to allow cross-examination on that basis did not meet the new-trial standard, despite the arguable Brady violation, where the defendant did cross-examine the witness on other points  specifically that she "could not remember the details of the evening in question." Id. at 40, 528 A.2d at 1116.
¶ 16. We need not rely on the State's broad reading of Sird because defendant here fails, as a matter of law, to meet an element that is in both Brady and the new-trial standard  that is, the requirement that the evidence on the videotape be newly discovered. For purposes of an alleged Brady violation, we held in LeClaire:
The purpose of the first element, suppression of evidence by the State, and Brady as a whole is "to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." United States v. LeRoy, 687 F.2d 610, 619 (2d Cir.1982). Therefore, where the defendant has notice of the essential facts which would allow the defendant to take advantage of any exculpatory evidence, and fails to do so, the defendant cannot then argue under Brady that the prosecution suppressed or failed to disclose such evidence. See United States v. Zackson, 6 F.3d 911, 918 (2d Cir.1993).
2003 VT 4, ¶ 9, 175 Vt. 52, 819 A.2d 719. For purposes of a new trial motion based on newly discovered evidence, the evidence must "be truly new and not undiscovered merely through a lack of diligence." State v. Sheppard, 155 Vt. 73, 75, 582 A.2d 116, 118 (1990). However expressed, defendant cannot meet this element.
¶ 17. The record shows that defendant was well aware of allegations that D.T. and K.T. had been subjected to physical and sexual abuse while living with their mother in Texas. Defendant reported these allegations to DCF, and as the trial court found, he provided more detail about the alleged abuse than did D.T. Defendant knew that the children would be interviewed at the Springfield DCF office in December 2002, and the State's evidence also showed that in February 2003 defendant told a DCF employee that he had requested a copy of D.T.'s statement from the Springfield detective. The issue of prior abuse in Texas was also discussed at trial. Given defendant's extensive knowledge of these topics, he clearly could have discovered the videotape through the exercise of due diligence.
¶ 18. Irrespective of any other grounds, defendant's motion for a new trial was properly denied because the evidence that was not presented at trial was not newly discovered.
Affirmed.
NOTES
[*] Ordinarily, the standard of review is abuse of discretion. See State v. Palmer, 169 Vt. 639, 640, 740 A.2d 356, 358 (1999) (mem.). In this case, however, the district court's decision is based on a legal ruling  the court's interpretation of the rape-shield act and its applicability to the evidence in question. Further, we have adopted a rationale different from that of the district court. Our holding is that it would have been an abuse of discretion to grant the new-trial motion in view of the fact that defendant knew of the evidence prior to trial.