In re Dwight Tester, No. 209-4-08 Wmcv (Wesley, J., Mar. 23, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **Civil Division** |
| **Windham Unit** | **Docket No. 209-4-08 Wmcv** |

In re DWIGHT TESTER
    Petitioner

## OPINION AND ORDER
## GRANTING STATE'S MOTION FOR SUMMARY JUDGMENT
## and DENYING THE PETITION FOR POST-CONVICTION RELIEF

In July 2003, at the conclusion of a jury trial, Dwight Tester was found guilty of aggravated sexual assault involving a child under the age of ten. His conviction was upheld on appeal, and a second appeal affirmed the denial of his motion for new trial based on the claim that the State withheld evidence. On April 21, 2008, Mr. Tester filed a petition for post-conviction relief, initially as a self-represented litigant. Following the appointment of counsel, an amended petition was filed on October 28, 2009. In this amended pleading, Petitioner asserts that he was denied effective assistance of trial counsel based on alleged failures during pretrial investigation. On September 13, 2010, the State filed a motion for summary judgment. Petitioner opposed the motion on October 13, and filed a cross-motion for summary judgment. The State opposed the cross-motion by memorandum filed November 12, 2010.

Summary judgment is appropriate when the record establishes that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the court accepts as true allegations made in opposition to the motion for summary judgment, provided they are supported by evidentiary material. *Robertson v. Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356.

To support its motion for summary judgment, the State filed a statement of undisputed facts pursuant to V.R.C.P. 56(c)(2). In response, Petitioner disputed the characterization of several of the State's facts or described them as argument.[1] Based on the uncontested facts, the record in this case, and the following analysis, the State's Motion for Summary Judgment is **GRANTED**.

*Factual and Procedural Background*

Petitioner was charged with aggravated sexual assault in April of 2003 and Attorney Gerald Altieri was assigned as defense counsel. At trial, in order to establish Petitioner's guilt, the State relied substantially on the statements made by the complaining witness to a child welfare investigator. The complaining witness, D.T., is Petitioner's daughter. The evidence showed that in April 2003, when D.T. was seven years old, she told her foster mother that her father had come into her room, knelt by her bed, and touched her vagina. Following this disclosure, D.T. was interviewed by a Bellows Falls police detective and an investigator with the Department for Children and Families (DCF). At the interview, D.T. reiterated that Petitioner had come into her room and touched her, and she indicated that the touch was "inside" her vagina. This interview will be referred to as the "April 2003 interview".

Prior to the criminal trial, the District Court held a hearing to determine whether the statements made by the victim at the April 2003 interview were admissible under Rule 804a of the Vermont Rules of Evidence. At this hearing, Atty. Altieri offered no expert testimony, nor did he call any witnesses. After his cross-examination of the State's witnesses, however, Atty. Altieri argued that the statements were unreliable and

---

[1] Petitioner did not include a separate statement of undisputed facts to support his motion, as required by V.R.C.P.56(c)(2), although he did included two additional facts in his response to the State's statement of material facts.

2

should be excluded. The District Court ruled that the statements were admissible, a decision upheld by the Vermont Supreme Court in its opinion affirming the conviction, *State v. Tester*, 2006 VT 24, 179 Vt. 627 (mem.).

At trial, Petitioner testified in his own defense. He stated, among other things, that he believed that the victim's grandmother, Alice Szaoly, may have instructed D.T. to fabricate a story about him. In response, the State called Ms. Szaoly as a rebuttal witness. The State had not disclosed Ms. Szaoly as a witness, as it had only planned to call her in rebuttal in the event Petitioner elected to testify. Ms. Szaoly testified that she had not encouraged the victim to implicate Petitioner in this case.

At the conclusion of the trial, Petitioner was found guilty. On direct appeal, the Vermont Supreme Court affirmed the conviction explaining that the victim's hearsay statements were properly admitted at trial, and that the evidence was sufficient to establish the defendant's guilt. *Tester*, 2006 VT 24.

In October of 2004, while the appeal was pending, Petitioner filed a motion for a new trial under V.R.Cr.P. 33. He asserted that he had located a videotaped interview of D.T. and her older sister K.T., which took place in December of 2002 (referred to as the "December 2002 interview"), approximately four months before the date of his arraignment for the alleged assault against D.T. Petitioner argued that he was entitled to a new trial because the videotape was exculpatory evidence that the State was constitutionally obligated to disclose.

The December 2002 interview involved the same DCF investigator who participated in the April 2003 interview, but a different police officer, Corporal Small of the Springfield, Vt. Police Department. The interview had been arranged by Petitioner,

3

and he was just outside the interview room while his daughters were questioned. Petitioner informed the investigators of his belief that his wife and her boyfriend had sexually abused D.T. and her sister, K.T. During the interview, K.T. did the majority of the talking. D.T. participated only briefly. At one point, D.T. stated that while at her mother's house someone had come into the bathroom and pulled down his pants and boxers in front of her. She also stated that a friend of her mother's had touched her, but she provided no additional explanation as to either of these incidents.

The District Court denied Petitioner's motion for a new trial, holding that the December 2002 interview provided no support for any assertion that D.T. had been mistaken about who assaulted her as described by her statements in 2003. The Court questioned the relevance of the information on the videotape to the charges against Petitioner, noting that the victim's sister provided almost all of the statements at the interview, and that the focus of the interview was as to alleged assaults which Petitioner believed had been committed by the victim's mother and boyfriend in Texas. On appeal, the Supreme Court affirmed on alternate grounds, finding that, given Petitioner's extensive knowledge of the prior allegations of abuse, the evidence could have been discovered through the exercise of due diligence, and was exempted from any obligation of disclosure by the State. *State v. Tester,* 2007 VT 40, 181 Vt. 506.

While the petition for post-conviction relief claims that Petitioner was denied effective assistance of trial counsel, the allegations are at some variance from the formulations drawn from Petitioner's cross motion for summary judgment, and his opposition to the State's motion for summary judgment. In the amended petition filed on Oct. 28, 2009, Petitioner alleges that:

4

> Defense counsel failed to conduct due diligence in pre-trial discovery, despite information provided by Petitioner that would have produced evidence, including investigations, testimony and video and/or audio recordings of an earlier investigation by DCF as to whether the complainant in State v. Tester had been sexually abused by her mother and another man.

The amended petition further includes the claim that Petitioner informed his counsel "of such prior investigation and the Petitioner instigated the investigation after concern over Complainant K.T.'s behavior". It alleges that Petitioner requested counsel to obtain the videotape, and had it been done, "[p]etitioner would have had the opportunity to offer not merely an alternative explanation for K.T.'s accusation against Petitioner, but to impeach K.T.'s witnesses who provided K.T.'s hearsay statements against Petitioner, by showing K.T.s behavior and mannerisms in the prior investigation"(sic).[2]

In the course of developing his claim of ineffective assistance of counsel, Petitioner consulted with Attorney Darah Kehnemuyi with respect to the standards of representation, and an expert opinion as to whether the representation of Petitioner by Atty. Altieri fell below those standards. Atty. Kehnemuyi's opinion letter dated April 25, 2010 is included in the summary judgment record. In pertinent part, Atty. Kehnemuyi holds the following opinions:

> In the strict context of trial and within the confines of the courtroom, the performance of defense counsel was adequate.
> * * *
> It is my opinion that the recordings (one video and one audio) should have been located and reviewed by an expert witness retained by the defense, with expertise in the area of conducting interviews of child sexual assault victims, for the purposes of determining whether the interviews were

---

[2] The Court assumes that the consistent reference in the amended petition to K.T. as the complaining witness against Petitioner resulted from typographical, clerical or other form of mistaken oversight. It is beyond dispute that the initials of the complaining witness whose accusations resulted in Petitioner's conviction are D.T. The uncorrected oversight interjects unfortunate confusion in this case, however, since the initials of D.T.'s older sister are K.T., and both K.T. and D.T were present during the December 2002 interview that is central to Petitioner's claim of ineffective assistance of counsel.

5

conducted by professional standards, were not unduly suggestive, and whether the child was capable of, or was in fact, accurately reporting the allegation of sexual abuse.

\* \* \*

It is unclear from the materials reviewed what, if any pretrial depositions were taken by defense counsel, other than the deposition of D.T.….However, I am particularly concerned as to whether or not Alice Szaoly was either deposed in pretrial discovery, or whether a defense investigator was asked to obtain a sworn statement from her pretrial

\* \* \*

At trial an issue was made of the transfer of D.T. and her siblings from her mother in Texas to Defendant, who then immediately moved them to Vermont. If Defendant provided information to defense counsel directly contradicting or explaining the story of Ms. Szaoly about that transfer of custody, then such information would have served two purposes. First, it would have undermined the testimony of an important witness for the State. Secondly, such information might have served to establish that Mr. Tester acted as a parent concerned for the best welfare of his children. As to the latter point, it would be useful to know what if any investigation was undertaken. For example, were there prior investigations conducted by Vermont SRS, or similar agency in any other State that might have served to either support the Defendant or undermine the credibility of the complaining witness. Failure of a defense counsel to at least inquire, if not investigate to some degree, such issues pretrial would amount to deficient performance.

In Petitioner's response to the State's motion for summary judgment, which included his own cross-motion, his arguments continue to vacillate as to the details of trial counsel's defective representation; or, as described by the State in its opposition to the cross-motion for summary judgment, "Defendant's post-conviction relief claims are a moving target". Petitioner argues that the State "misconstrues Petitioner's allegations", stating that while "Petitioner alleges that counsel should have obtained the recording of the December 3, 2002 interview, it is the second interview counsel should have submitted to any expert witness on interview technique." Unfortunately, by this argument, Petitioner has misconstrued his own expert's opinion letter. As the State rightfully analyzed, Atty. Kehnemuyi's opinion that an expert should have been engaged to

6

comment on whether "the interviews were conducted by professional standards, were not unduly suggestive, and whether the child was capable of, or was in fact, accurately reporting the allegation of sexual abuse" specifically pertained to the December 2002 interview. This was the interview that became the subject of the motion for a new trial as referenced in the opinion letter. The letter makes no mention of the April 2003 interview. While Petitioner's summary judgment memorandum argues as to that interview that a "proper pre-trial investigation, once noticed by the State that it would seek to introduce hearsay statements of a police interview of a child, is to consult and acquire an expert trained in proper child interview techniques," this is an opinion which, on the summary judgment record, is not supported by the proffer of expert testimony establishing that trial counsel mishandled the April 2003 interview.

Petitioner's summary judgment brief deviates in other respects from the expert opinion he proffered as establishing ineffective assistance of counsel. As just noted, Atty. Kehnemuyi concluded that trial counsel's failure to locate a copy of the December 2002 interview prevented its analysis by an expert. Petitioner not only disclaims this suggestion, but elaborates on a wholly different thesis as to why the failure to locate the December 2002 interview videotape was prejudicial. He argues that "had the jury heard the interview of DT they would have understood that she could relate her knowledge of the abuse without the type of reluctance she demonstrated in the subsequent interview with DCF worker Melke and Sgt. Hoyt. The jury would have heard her demeanor, her lack of hesitancy, though childish distract (sic). Most of all they would have known that she would not needed (sic) the coaching of someone like her foster mother to help her describe any abuse by Petitioner." Claiming that because the "two interviews were so

7

close in time", Petitioner contends "that the jury could not have helped but understand it was not D.T., but the circumstances of the different interviews, one without interference of an interested party, and the second one with the involvement of her foster mother, that might have lead to a false accusation against Petitioner." However persuasive Petitioner may find this analysis, he has not supported it by the opinion of an expert.

Atty. Kehnemuyi criticized trial counsel for failing to depose D.T.'s grandmother, State's rebuttal witness Alice Szaoly, and Petitioner makes reference to his expert's opinion in his memorandum. However, Petitioner's legal analysis completely omits any discussion of Atty. Kehnemuyi's thesis that Ms. Szaoly might have been effectively cross-examined regarding details of the transfer of custody of D.T. and K.T. to Vermont from their mother's home in Texas. Petitioner also fails to further discuss his expert's suggestion, admittedly vague, that it "would be useful to know if any investigation was undertaken", referring to prior child welfare investigations involving D.T. by agencies in other states or in Vermont. Rather, the analysis as to trial counsel's purported error by his failure to depose Ms. Szaoly is limited to the claim: "It was imperative to know what she might testify to and be prepared to counter her testimony. Counsel for Petitioner did not do this."

*Discussion*

In order to prevail on a petition for post-conviction relief, the petitioner must establish by a preponderance of the evidence that: "(1) his counsel's performance fell below an objective standard of performance informed by prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the

8

proceedings would have resulted in a different outcome." *In re Grega*, 2003 VT 77, ¶ 7, 175 Vt. 631 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

"Post-conviction relief is not a substitute for appeal, but rather a limited remedy requiring petitioner to demonstrate by a preponderance of the evidence that fundamental errors rendered his conviction defective." *In re Koveos*, 2005 VT 28, ¶ 6, 178 Vt. 485.

In assessing claims of ineffective assistance of counsel, there is a strong presumption that counsel's performance was both competent and professionally adequate. *Grega*, 2003 VT 77, ¶ 7; *In re Cohen*, 161 Vt. 432, 434–35 (1994). An attorney has "wide latitude" to make reasonable tactical decisions with respect to trial strategy, *In Re Kasper*, 142 Vt. 31, 37 (1982), and except in the rare case where ineffective representation is readily apparent, expert testimony is necessary to show the applicable professional standard of care. *Grega*, 2003 VT 77, ¶ 16. The assessment of counsel's performance is undertaken in consideration of the entire record and the situation at the time of trial, without the benefit of hindsight. *Id*., ¶ 14; *In re Hatten*, 156 Vt. 374, 378 (1991). Importantly, the "trial of [a] case ... [is] susceptible to more than one strategy. The proper question is whether trial counsel had any reasonable strategy and whether they pursued it with adequate preparation and diligence." *In re Dunbar*, 162 Vt. 209, 213 (1994).

There are no material facts in dispute, as demonstrated by the parties' respective statements of undisputed facts. Thus, it is appropriate to decide the petition on the summary judgment record, as a matter of law. In consideration of that record, the Court cannot conclude that Attorney Altieri's performance fell below an objective standard of

reasonable competence or that the there is a reasonable probability that the outcome of the trial would have been different.[3]

A) *Use of the December 2002 interview*

The Court turns first to the only allegation of ineffective assistance that is actually framed by the amended petition, the claim that trial counsel was derelict in failing to locate and use the videotape from the December 2002 interview, which included some statements by D.T. about her prior exposure to sexual matters. As explained, Petitioner's multiple approaches to structuring this claim leave it woefully lacking support. Atty. Kehnemuyi opines that the tape was important because if would have afforded material for an expert on child interviewing techniques to assess the nature of the questioning and whether D.T. was susceptible to suggestion. Yet, this opinion apparently did not comport with Petitioner's theory of his case. Rather, he disclaims that any expert assessment was needed as to the 2002 interview, (but insists that it was crucial to the success of the suppression hearing at which the 2003 interview was held admissible under V.R.E.804a; an issue Atty. Kehnemuyi did not address in his opinion letter). Nevertheless, Petitioner holds fast to the importance of the 2002 videotape, not as the possible subject of expert commentary, but because, once having seen it, the jury ostensibly would have judged D.T.'s credibility differently (a claim also unaddressed by Atty. Kehnemuyi).[4]

---

[3] The summary judgment record includes the opinion letter of Stephen Fine, Esq. who was engaged by the State to offer expert legal opinion as to the standard of representation expected of Atty. Altieri under the circumstances presented by the case, and whether there was any prejudicial deviation from such standard. Atty. Fine's letter takes issue with virtually each aspect of the analysis offered by Atty. Kehnemuyi. For the reasons explained in this opinion, however, the opposing opinions of legal experts do not create a material dispute of fact requiring a trial because the opinions offered by Petitioner's expert are either: i) unsupported by factual predicates; ii) insufficient to raise a triable issue as a matter of law; or iii) unsupportive or inconsistent with Petitioner's claims.

[4] By late November 2010, when the summary judgment pleadings closed, the different views between Petitioner's expert and his post-conviction relief counsel had become patent as to the significance of the 2002 videotape, and the need for an expert at the Rule 804a hearing on the reliability of D.T.'s 2003

10

Since Petitioner disavows Atty. Kehnemuyi's opinion that an expert should have been retained to offer an opinion as to the 2002 videotape, the Court will spend little time in further examination of this claim. Whatever confusion may lie at the heart of the apparent disconnect in theories regarding the significance of the 2002 interview, it serves to emphasize the dubious provenance of any claim for its relevance, as observed by the District Court in denying the motion for a new trial. The interview was orchestrated by Petitioner. It took place four months *before* his arraignment on the charge that resulted in his conviction. Nothing in the record of the interview establishes that D.T. was subjected to suggestive techniques to encourage her to accuse Petitioner, and she *did not* accuse Petitioner during the interview. As acknowledged by Petitioner, and notwithstanding the opinion of Atty. Kehnemuyi, there is no basis for concluding that an expert could have analyzed the December 2002 interview and offered any evidence likely to have altered the outcome of the trial.

Petitioner's alternate theory for the significance of the December 2002 interview, as discussed below, suffers from the fundamental flaw that it is not endorsed by his legal expert. See, *State v. Bristol*, 159 Vt. 334, 338 (1992)(expert testimony required to establish claim of that counsel's performance fell below objective standard of reasonableness informed by prevailing professional norms).

In bears noting, that as framed by his memorandum, Petitioner's alternative theory could *not* have attracted credible endorsement from one qualified to testify as to the prevailing professional norms. Importantly, while it is apparently Petitioner's contention that he told Atty. Altieri about the existence of the December 2002 interview,

---

interview. Thus, it is notable that the record includes no further opinion by Atty. Kehnemuyi attempting to reconcile these seeming inconsistencies.

and that his attorney failed to obtain a tape or otherwise investigate this interview, this assertion is not supported by an affidavit by Petitioner, or by citation to any other admissible evidence in the summary judgment record. V.R.C.P.56(c)(2); *Gallipo v. City of Rutland*, 2005 VT 83,178 Vt. 244. Nevertheless, Petitioner believes that this tape would have shown that D.T. had (1) outside knowledge of sexual conduct which could have informed her ability to fabricate a story about her father and (2) if the jury had compared the December 2002 interview video to the April 2003 interview, or to D.T.'s live testimony, it would have raised a reasonable doubt as to the truth of D.T.'s allegations against Petitioner. This claim represents little more than wishful thinking.

As already noted, the circumstances of the two interviews were very different. Significantly, D.T.'s participation in the December 2002 interview was incidental to that of her older sister. Her statements and answers were brief and often confusing, and the interviewers either did not, or could not, develop useful details to put her responses in context. Petitioner makes the conclusory assertion that D.T.'s "demeanor" and "lack of hesitancy", or how she "openly described sexual or other improper acts by her mother and her boyfriend", would have markedly affected the jury's view of D.T.'s credibility. Even if the transcript of the interview offered some basis for Petitioner's claimed comparison – and the Court is unable to agree that it does – such subjective and elusive potential effects can not objectively establish the likelihood of a different outcome.

Furthermore, even had trial counsel learned of the interview, and secured a copy of the videotape, it is extremely speculative to assume that it would have survived the State's objection based on relevance, given the danger of confusion and speculation

presented by the completely separate scenarios involved with the two interviews.[5]

Finally, Petitioner is particularly presumptuous in his claim that the earlier interview demonstrates D.T.'s ability to give an account "without the need for coaching", as compared to her claimed reliance on her foster mother's account when describing Petitioner's sexual assault. Despite the assertion that during the December 2002 interview D.T. was "outside of Petitioner's presence" and "without any need for coaching or guidance from Petitioner", the circumstances make plain that Petitioner arranged the interview and was present outside the room while it took place. Between the two sets of circumstances, it is hardly obvious that one was less fraught than the other, insofar as D.T.'s account might have been influenced by the need to please adults implicated by the events.

### *Reliability of the April 2003 Interview*

Returning to Petitioner's other theory which is unsupported by any clear statement of expert opinion by Atty. Kehnemuyi - the claim that testimony by an expert in child interviewing techniques would have either prevented the admission of D.T.'s hearsay statements made at the April 2003 interview, or undercut the impact of those statements on the jury. This claim of substandard representation also must be characterized as fatally speculative, in keeping with each of his other assignments of error. The transcripts filed in support of summary judgment disclose that there is only a limited record of the April 2003 interview of the victim. *See* Tr. at 4-5 (July 10, 2003) (explaining that the only video footage of the April 2003 interview was the "rapport

---

[5] As the State argues, there would likely also have been an objection based on the Rape Shield Law. In light of the rest of its analysis, the Court is not compelled to parse the impact of that statute, or the potential applicability of its exceptions, other than to note that this additional hurdle makes the speculative nature of the 2002 interview more readily apparent.

building process" and not the "substantive interview" because the video used to record was too short in duration to capture the entire interview); Tr. at 87 (July 9, 2003) (Atty. Altieri states that the April 2003 interview is "not videotaped at all. It's partially audio taped.").[6] On this record, it seems very unlikely that there was a sufficiently preserved record that would have supported any expert analysis.

Crucially and conclusively, however, even assuming that a record had been preserved that would have allowed for expert assessment, Petitioner fails to articulate what an expert analysis of this information would have yielded, and how it would have created a reasonable probability that the outcome of the trial would have been different. *Grega*, 2003 VT 77, ¶ 7. The second prong of *Strickland* should make abundantly clear to post-conviction practitioners that second-guessing trial counsel's trial strategy, particularly as regards claims for the failure to engage expert witnesses, will never suffice, *except* by demonstrating the nature and foundation for the missing evidence in a fashion that compels the conclusion that the failure to produce it was prejudicial to the outcome of the trial. The mere conclusory allegation that an expert should have been hired in a particular situation, and that the failure to have done so amounts to poor practice, *will never* by itself support a claim for post conviction relief. To make such an assertion, post-conviction counsel cannot avoid matching and exceeding the diligence claimed lacking by trial counsel; namely, reassessing the pre-trial development of the evidence, making inquiry of potentially qualified experts, obtaining relevant opinions if

---

[6] Atty. Kehnemuyi did not list any recordings or transcripts of either interview as part of his investigation when writing his opinion letter. Assuming that he did not review them, his opinion devolves to a conclusion that trial counsel's claimed omissions amount to *per se* ineffective representation, regardless of the contents of the interview, and regardless of any conclusions a qualified expert might have drawn from them. Such an unsupported opinion, as a matter of law, can not support the burden of proof to require a new trial based on representation beneath prevailing norms. *State v. Bristol*, 154 Vt. at 338 (the equivocal testimony of petitioner's two experts was insufficient as a matter of law to carry his burden).

14

they can be supported, and demonstrating at trial that the previously undeveloped evidence would likely have changed the verdict. As that process was not followed in this case, summary judgment must be granted for the State.

*Failure to Depose Ms. Szaoly*

In his most insubstantial assertion, Petitioner argues that Atty. Altieri should have deposed Ms. Szaoly in preparation for trial.[7] It is undisputed that Ms. Szaoly was called as a rebuttal witness who was not required to be disclosed as a State's witness. Petitioner maintains that, nevertheless, Atty. Altieri should have deposed her because "counsel was aware of who she was and [that she] would be hostile to Petitioner." As noted above, while Attorney Kehnemuyi includes some discussion of Ms. Szaoly's role, it is vague and undeveloped. He speculates that some differing account of how D.T. and her siblings came to be with Petitioner in Vermont might have afforded counsel an opportunity for effective cross examination. Yet, he doesn't support this speculation with references to the transcript of Ms. Szaoly's testimony, or any affidavit or trial testimony by Petitioner, or anyone else, that establishes that Ms. Szaoly could have been effectively impeached. Even more importantly, he doesn't explain how taking a deposition would have enabled a different trial approach that probably would have altered the outcome. *Grega*, 2003 VT 77, ¶ 7. Doubtless, this lack of development explains Atty. Kehnemuyi's concession that he does not have "sufficient information to provide a definitive opinion" on any claim

---

[7] Consistently with the vague allegations in the petition as to inadequate trial preparation, Petitioner has variously claimed that Atty. Altieri only deposed the victim in this case. However, Petitioner has failed to put forward any admissible evidence to counter the State's statement of undisputed facts, which includes the claim that Mr. Altieri deposed all witnesses called by the State in its case-in-chief. Furthermore, Atty. Kehnemuyi's opinion letter only identifies the failure to depose Ms. Szaoly as a possible departure from effective representation.

that failure to depose witnesses exemplified sub-standard representation. As with those that have preceded it, there is no foundation for this claim of ineffective representation.

Based on the foregoing, it is hereby **ORDERED**:

The State's motion for summary judgment is **GRANTED.** The petition for post-conviction relief is **DENIED** and **DISMISSED WITH PREJUDICE.**

DATED March     2011 at Newfane, Vermont,


_____
John P. Wesley
Presiding Judge

16